

**Posternak**
POSTERNAK BLANKSTEIN & LUND LLP

FILED
IN CLERKS OFFICE

2005 FEB 24  A 10: 57

U.S. DISTRICT COURT
DISTRICT OF MASS.

Nicholas J. Nesgos
617-973-6197
617-722-4936 FAX
nnesgos@pbl.com

February 24, 2005

*Via Hand Delivery*

Clerk, Civil Division
United States District Court
U.S. Courthouse
One Courthouse Way
Boston, MA 02110

**Re:    Care Realty Funding, LLC and 265 Essex Street, LLC**
**v. John G. Albert**
**U.S.D.C. Civil Action No. 05-10260-GAO**

Dear Sir or Madame:

I enclose, pursuant to Local Rule 81.1, certified copies of all records and proceedings in the state court and a certified copy of all docket entries in the state court.

Thank you for your attention to this matter.

Very truly yours,

Nicholas J. Nesgos

Enclosures
cc:    Mark M. Mulligan, Esquire (w/out attachments)

ID # 421427v01/13792-2

### Commonwealth of Massachusetts
### ESSEX SUPERIOR COURT
### Case Summary
### Civil Docket

## ESCV2005-00192
## Care Realty Funding LLC et al v Albert

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 02/02/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 02/16/2005 | **Session** | B - Civil-CtRm 1 (Newburyport) | | |
| **Origin** | 1 | **Case Type** | A03 - Commercial paper | | |
| **Lead Case** | | **Track** | F | | |
| | | | | | |
| **Service** | 05/03/2005 | **Answer** | 07/02/2005 | **Rule12/19/20** | 07/02/2005 |
| **Rule 15** | 07/02/2005 | **Discovery** | 11/29/2005 | **Rule 56** | 12/29/2005 |
| **Final PTC** | 01/28/2006 | **Disposition** | 03/29/2006 | **Jury Trial** | No |

## PARTIES

**Plaintiff**
Care Realty Funding LLC
Active 02/02/2005

**Private Counsel 237120**
Melvin S Hoffman
Looney & Grossman
101 Arch Street
Boston, MA 02110
Phone: 617-951-2800
Fax: 617-951-2819
Active 02/02/2005 Notify

**Private Counsel 554947**
Charles P Kindregan
Looney & Grossman
101 Arch Street
Boston, MA 02110
Phone: 617-951-2800
Fax: 617-951-2819
Active 02/02/2005 Notify

**Private Counsel 559431**
Mark M Mulligan
Looney & Grossman
101 Arch Steet
Boston, MA 02110
Phone: 617-951-2800
Fax: 617-951-2819
Active 02/02/2005 Notify

**Plaintiff**
265 Essex Street LLC
Active 02/02/2005

**Commonwealth of Massachusetts**
ESSEX SUPERIOR COURT
Case Summary
Civil Docket

## ESCV2005-00192
## Care Realty Funding LLC et al v Albert

**Defendant**
John G  Albert
Served: 02/03/2005
Served (answr pending) 02/03/2005

### ENTRIES

| Date | Paper | Text |
|------|-------|------|
| 02/02/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 02/02/2005 | | Origin 1, Type A03, Track F. |
| 02/02/2005 | | #2 Notice ORDER issued, hereon returnable at the  on February 08, 2005 |
| 02/02/2005 | 2.0 | Plaintiff Care Realty Funding LLC's MOTION for Short Order of Notice |
| 02/02/2005 | 3.0 | Plaintiff Care Realty Funding LLC's MOTION for appointment of counsel name |
| 02/02/2005 | | MOTION (P#3) ALLOWED (Lowy, Justice) Notices mailed February 02, 2005 |
| 02/02/2005 | 4.0 | Plaintiff Care Realty Funding LLC's MOTION for Preliminary Injunction |
| 02/07/2005 | 5.0 | Defendant John G Albert's joint MOTION to continue  motion hearing on preliminary injunction  until 2/10/05, filed and allowed, (Welch, J.) |
| 02/08/2005 | 6.0 | Plaintiff Care Realty Funding LLC, 265 Essex Street LLC's joint MOTION to continue preliminary hearing. filed 2/7/05 |
| 02/10/2005 | 7.0 | SERVICE RETURNED (summons): John G Albert, service made on February 03, 2005 (in hand) |
| 02/10/2005 | 8.0 | Notice for Removal to the United States District Court filed by John G Albert |
| 02/16/2005 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 02/08/2005 | Civil-CtRm 1 (Newburyport) | Motion/Hearing: order of notice | Event not held-joint request |
| 02/10/2005 | Civil-CtRm 1 (Newburyport) | Motion/Hearing: order of notice | Event canceled not re-scheduled |

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    SUPERIOR COURT
                                              C.A. No.

_____
                                  )
CARE REALTY FUNDING, LLC AND      )
265 ESSEX STREET, LLC             )
                                  )
          Plaintiffs,             )
v.                                )
                                  )
JOHN G. ALBERT                    )
                                  )
          Defendant.              )
_____  )

### VERIFIED COMPLAINT

1.    This is an action brought by the plaintiff, Care Realty Funding, LLC ("Funding"),

to recover sums due it by the defendant John G. Albert as guarantor of all obligations of Essex

North Health System, LLC ("Essex") under a promissory note executed and delivered by Essex

to Funding. Essex has defaulted on the promissory note. On September 9, 2004, Funding

notified Essex and Albert, a principal of Essex, that an event of default had occurred under the

promissory note and loan agreement and imposed additional post-default interest at the highest

rate permitted by law. Essex and Albert have not paid what they owe under the promissory note

and guaranty. Also, this is an action brought by the plaintiff, 265 Essex Street, LLC (the

"Landlord"), to recover rent due under a lease between the landlord and Essex and guaranteed by

defendant Albert.

### Parties

2.    Plaintiff Care Realty Funding, LLC is a Delaware limited liability company with

a principal place of business in Hackensack, New Jersey.

3.    Plaintiff 265 Essex Street, LLC is a Delaware limited liability company with a principal place of business in Hackensack, New Jersey.

4.    Plaintiff Care Realty Funding, LLC and Plaintiff 265 Essex Street, LLC are affiliates

5.    Defendant John G. Albert is a natural person who resides in Windham, New Hampshire and is principal of Essex.

### Jurisdiction and Venue

6.    The Superior Court has jurisdiction over this action and has personal jurisdiction over the defendants.

7.    Venue is appropriate in Essex County pursuant to M.G.L. c. 223 § 1.

### The Loan and Guaranty

8.    On or about November 7, 2002, Essex executed and delivered to Funding a promissory note in the original principal amount of $550,000 ("Note"). A true and accurate copy of the Note is attached as Exhibit A.

9.    Essex is a Massachusetts limited liability company with a principal place of business in Beverly, Massachusetts.

10.    On or about November 7, 2002, in connection with Funding's loan of $550,000 to Essex, Essex executed a Loan and Security Agreement ("Loan Agreement") in favor of Funding to secure Essex's obligations to Funding. A true and accurate copy of the Loan Agreement is attached as Exhibit B.

11.    On or about November 7, 2002, Albert and Diane M. Barry ("Barry") executed a Working Capital Loan Guaranty ("Loan Guaranty"). A true and accurate copy of the Loan Guaranty is attached as Exhibit C hereto. The Loan Guaranty, together with the Note, Loan

Agreement and all related documents are collectively referred to as the "Loan Documents". Upon information and belief, Barry is deceased.

12.    Under the Loan Guaranty, Albert and Barry each unconditionally guaranteed all obligations of Essex to Funding under the Loan Documents.

13.    The Note further provides that, at the option of Funding, the Note will become immediately due and payable without further notice or demands if Essex fails to pay in full when due any installment of principal or interest.

14.    By their terms, the Note and Loan Agreement have matured.

15.    The total amount of Essex's and Albert's obligations to Funding in connection with the Note described above is $519,027.00 as of January 1, 2005, plus interest, attorneys fees and costs which continue to accrue.

The Guaranty of the Note

16.    As an inducement to Funding to make the loan to Essex, Albert and Barry executed the Loan Guaranty in favor of Funding, guaranteeing the obligations of Essex. Under the terms of the Loan Guaranty, Albert and Barry jointly and severally, absolutely, unconditionally and irrevocably guaranteed, as principals, the full and timely performance of all Essex's obligations under the Loan Agreement.

17.    Under the terms of the Loan Guaranty, Albert irrevocably submitted to the jurisdiction of this Court for the purposes of any action or suit arising out of the Loan Guaranty.

The Lease and Lease Guaranty

18.    On or about August 23, 2002, Essex entered into a lease with the Landlord for the building known as 265 Essex Street, Beverly, Massachusetts. On November 7, 2002, Essex and

3

the Landlord executed a First Amendment to the lease (collectively, the "Beverly Nursing Home Lease").

20.    On or about August 22, 2002, Albert and Barry executed a Guaranty (the "Lease Guaranty") pursuant to which Albert and Barry jointly and severally, each absolutely, unconditionally and irrevocably guaranteed as principals the full and timely performance of all of Essex's obligations under the Beverly Nursing Home Lease up to a maximum of three times the current monthly Base Rent as defined in the Beverly Nursing Home Lease and the $400,000 Working Capital Shortfall as defined in the Beverly Nursing Home Lease. A true and accurate copy of the Lease Guaranty is attached as Exhibit D hereto. Upon information and belief, Barry is deceased.

21.    Essex is in default of its obligations to the Landlord under the Beverly Nursing Home Lease. Among other things, Essex has failed to make payments due on numerous dates.

22.    The total amount of Albert's liability to Landlord under the Lease Guaranty is $664,000, plus interest, collection costs, and attorneys' fees.

<u>Default Under Loan Documents</u>

23.    Essex is in default of its obligations to Funding under the Note and the Loan Agreement. Among other things, Essex has failed to make payments due on numerous dates.

24.    On or about September 9, 2004, Funding notified Essex and Albert, a principal of Essex, that an event of default had occurred under the Loan Agreement and Note by reason of Essex's failure to make payment of principal, interest, fees, expenses or amounts due to Funding under the Loan Agreement and Note when the same became due and payable. ("September 9, 2004 Notice"). A true and accurate copy of the September 9, 2004 Notice is attached hereto as Exhibit E.

25.     Essex has failed to and refused to respond to Funding's September 9, 2004 Notice and the demand for payment under the Note.

26.     As guarantor under the Loan Guaranty, Albert is liable to Funding for all amounts owed by Essex.

27.     As of January 1, 2005 the total amount owed under the Note, exclusive of attorneys fees and collection costs, is $519,027.00. Interest, late charges, collection costs and attorneys fees continue to accrue.

28.     Under the Loan Guaranty, Albert agreed to pay all costs and expenses of collection, including reasonable attorneys fees incurred or paid by Funding in enforcing its rights under the Loan Documents.

### The Need for Injunctive Relief

29.     Despite Funding's Notice and demands, Essex has not made payment to Funding as required under the Loan Documents.

30.     As principal of Essex and as guarantor pursuant to the Loan Guaranty and Lease Guaranty, Albert is clearly aware of Essex's defaults under the Note and the Beverly Nursing Home Lease and of his obligations as guarantor to fully and timely perform all obligations of Essex under the Note and the Beverly Nursing Home Lease

31.     Albert's failure to make timely payments on the Note and the Beverly Nursing Home Lease suggests that Albert is unable or unwilling to meet his obligations.

32.     Upon information and belief, on November 1, 2002, just prior to executing the Loan Guaranty, Albert caused the ownership of his home at 23 Hawthorne Road, Windham, New Hampshire to be transferred, from John G. Albert and Cheryl A. Albert as joint tenants to Cheryl A. Albert, individually.

33.    Upon information and belief, absent injunctive relief, Albert may engage in additional asset transfers and thus will not have the financial capacity to satisfy a judgment by the time judgment enters in this case in the Plaintiffs' favor.

<u>Count I</u>
(Against Albert as Guarantor of the Note)

34.    Plaintiffs repeat each and every allegation contained in the preceding paragraphs of this verified complaint with the same force and effect as if fully set forth herein.

35.    Albert executed a written guaranty of Essex's obligations to Funding under the Note.

36.    Essex is in default under the Note.

37.    Albert is indebted to Funding, and is liable to Funding, for all amounts for which Essex is liable to Funding under the Note.

<u>Count II</u>
(Against Albert as Guarantor of the Beverly Nursing Home Lease)

38.    Plaintiffs repeat each and every allegation contained in the preceding paragraphs of this verified complaint with the same force and effect as if fully set forth herein.

39.    Albert executed a written guaranty of Essex's obligations to the Landlord.

40.    Essex is in default under the Beverly Nursing Home Lease.

41.    Albert is indebted to the Landlord, and is liable to the Landlord, for the amounts set forth in the Lease Guaranty.

<u>Count III</u>
(Injunctive Relief)

42.    Plaintiffs repeat each and every allegation contained in the preceding paragraphs of this verified complaint with the same force and effect as if set forth fully herein.

43.    Because Essex is in default under the Note and Beverly Nursing Home Lease, Plaintiffs have a strong likelihood of success on the merits of its claims under both the Loan Guaranty and Lease Guaranty.

44.    Upon information and belief, absent injunctive relief, Albert, will not have the financial capability to satisfy a judgment by the time judgment enters in this case in Plaintiffs' favor because he may attempt to transfer or dispose of assets that he, directly or indirectly, owns, controls or has a beneficial interest in, for the purpose of preventing Plaintiffs from collecting the amounts owed under the Loan Guaranty and Lease Guaranty.

45.    Absent injunctive relief there is a substantial likelihood that Plaintiffs' legal remedies will be rendered meaningless and Plaintiffs will have little or no chance of collection from Albert.

46.    Entry of the injunctive relief requested herein will cause little or no harm to Albert, whereas denial of injunctive relief will cause substantial harm to Plaintiffs.


<u>Prayers for Relief</u>

Wherefore, Plaintiffs respectfully pray that this court:

1.    Enter judgment for Care Realty Funding, LLC against Albert in the full amount due to Funding under the Note and guaranteed by Albert, together with interest, costs, expenses, and attorneys fees;

2.    Enter judgment for 265 Essex Street, LLC against Albert in the full amount due to it under the Beverly Nursing Home Lease and guaranteed by Albert, together with interest, costs, expenses, and attorneys fees;

7

3.    Enter a preliminary injunction enjoining Albert from conveying, transferring, disbursing, concealing, encumbering, diminishing, devaluing, or distributing any assets, real, personal or mixed, which he, jointly or severely, directly or indirectly, owns, controls or has any beneficial interest in, excluding, however, only such assets which are reasonably necessary for the daily living expenses of Albert;

4.    Award Plaintiffs all of their costs, expenses, and fees, including attorneys fees; and

5.    Award Plaintiffs such further and other relief as this court deems just and proper.

                              CARE REALTY FUNDING, LLC, AND
                              265 ESSEX STREET, LLC
                              By its attorneys,


                              _____
                              Melvin Hoffman (BBO#237120)
                              Charles P. Kindregan (BBO#554947)
                              Mark M. Mulligan (BBO#559431)
                              Looney & Grossman LLP
                              101 Arch Street
                              Boston, MA  02110
                              (617) 951-2800

Dated: February 2, 2005

Verification

 I, Kevin P. Breslin, authorized representative of Care Realty Funding, LLC and of 265 Essex Street, LLC, do hereby swear that the facts contained in the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

_____

Kevin P. Breslin, authorized representative

STATE OF NEW JERSEY

Bergen, ss            Date: 2/1/05

 Then personally appeared before me the above named Kevin P. Breslin, who acknowledged the foregoing statement to be true to the best of his personal knowledge and belief.

_____

Notary Public

My Commission Expires:

9

EXECUTION COPY

## PROMISSORY NOTE

$550,000.00                                                                 November 7, 2002

FOR VALUE RECEIVED, pursuant to Section 3.3 of the Loan and Security Agreement ("Agreement") dated November 7, 2002 by and between Essex North Health System, LLC, a Massachusetts limited liability company ("Maker") and Care Realty Funding, LLC, a Delaware limited liability company ("Payee"), which is incorporated herein by reference, Maker hereby promises to pay to the order of Payee the principal amount of any and all Working Capital Loan Advances, which Advances shall not exceed FIVE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($550,000.00), made under the Agreement, together with Interest (as hereinafter defined). Payments shall be made in lawful money of the United States of America in immediately available funds and shall be made at the address of Payee identified in Section 12.2 of the Agreement or such other place as may be designated in writing from time to time by Payee. Such payments shall be made as follows:

On the earlier of (i) March 15, 2003; (ii) the date of termination of the Agreement; (iii) such date as is mutually agreed upon in writing by the parties hereto; or (iv) the date on which Payee issues a written demand to Maker for payment of Maker's obligations pursuant to Section 3.2 of the Agreement, Maker shall pay to Payee the sum of (x) the principal amount of the Obligation, plus (y) the interest due under this Note, less (z) all payments of principal and interest theretofore paid by the Maker. Interest due under this Note shall accrue at the daily compounded interest rate of fifteen (15) percent. Interest shall be calculated on the basis of the actual number of days elapsed over a 365-day year. Interest shall be compounded daily until paid.

Maker shall have the right at any time or from time to time to prepay all or part of the principal amount of this Note outstanding, provided that the Maker notifies the Payee at least five (5) days in advance of any such prepayment. Partial prepayment of the principal amount of this Note shall be in an aggregate principal amount of at least $5,000 or an integral multiple thereof. Prepayment of any amount hereunder shall be without any premium or penalty but shall include the payment of accrued interest on the amount prepaid to and including the date of prepayment. All such payments shall be applied to the first to accrued and outstanding interest due and then to principal.

Upon the occurrence of any Event of Default and at all times thereafter, at the option of Payee, by written demand to Maker, all Obligations shall become immediately due and payable, without presentment for payment, demand, protest and notice of protest or any further notice or demand of any kind.

Upon the occurrence of any Event of Default the obligation of Maker to make the payments required hereunder shall be absolute, unconditional and irrevocable and Maker shall make such payments without abatement, diminution or deduction regardless of any cause or circumstances whatsoever, including with limitation any defense, set-off, recoupment or counterclaim which Maker may have or assert against Payee or any other person.

This Note may not be amended, supplemented, restated or discharged except by an instrument in writing signed by Maker and Payee. No requirement of this Note may be waived at any time except by a writing signed by Payee nor shall any waiver be deemed a waiver of any subsequent breach or default by Maker. Maker waives presentment, demand, protest and all other demands in connection with the delivery, acceptance, performance, default or enforcement of this Note.

This Note shall bind Maker and Maker's successors and assigns and shall inure to the benefit of Payee and its successors and assigns. Maker may not assign or otherwise transfer any of its rights under this Note without the express written consent of Payee. All provisions hereof shall be subject to, governed by, and construed in accordance with Massachusetts law, without regard to principles of conflict of laws. Unenforceability of any provision hereof or any application of any provision hereof shall not affect the enforceability of any other provision or application of any provision. With the exception of the applicable terms and conditions of the Agreement, this Note constitutes a final written expression of all of the terms of this instrument, is a complete and exclusive statement of those terms and supersedes all oral representations, negotiations and prior writings, if any, with respect to the subject matter hereof. The relationship between Maker and Payee with respect to this Note is and shall be solely that of debtor and creditor, respectively, and Payee shall have no fiduciary obligation toward Maker with respect to this Note or the transactions contemplated thereby, other than those set forth in the Agreement. Any amendment or waiver hereof or any waiver of any right or remedy otherwise available must be in writing and signed by the party against whom enforcement of the amendment or waiver is sought.

For the purposes of this Note, the following terms shall have the following meanings:

"Event of Default" means the occurrence of any of the following events: (a) failure of Maker to pay or perform any Obligation hereunder when it becomes due and payable; (b) breach by Maker of any other provision, agreement, representation, warranty, or covenant set forth in this Note or the Agreement; (c) an Event of Default under Section 10 of the Agreement; (d) dissolution, termination of existence, insolvency, business failure or appointment of a receiver of any part of the property of Maker; (e) assignment for the benefit of creditors by Maker; (f) failure or inability of Maker to pay its debts as they come due; (g) commencement of any proceedings under any bankruptcy or insolvency laws by or against Maker; (h) any attachment, lien or additional security interest being placed upon any of the property which is security for this Note; (i) acquisition at any time or from time to time of title to or any interest in the whole or any part of the property which is security for this Note by any person, partnership, corporation, trust, joint venture or other entity other than the Maker.

"Obligation" means any present or future obligation, indebtedness, or liability of Maker owed to Payee of whatever kind, including all accrued interest thereon, and however evidenced, together with all extensions, renewals, amendments, restatements and substitutions thereof or therefor.

[The rest of this page intentionally left blank]

This Note has been duly executed by Maker as of the date first set forth above.

ESSEX NORTH HEALTH SYSTEM, LLC

By:  John G. Albert
Its:  A Member

Essex North Health Systems, LLC
c/o Landmark Health Solutions, LLC
57 Wingate Street
Haverhill, MA  01830
Attn: John G. Albert

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

I, Nathalie Hibble , a Notary Public of Suffolk County, Commonwealth of Massachusetts, do hereby certify that John G. Albert, authorized signatory for Essex North Health Systems, LLC, a Massachusetts limited liability company, personally appeared before me this day and executed the foregoing instrument as his act and deed and as the act and deed of the company.

Witness my hand and official seal, this the 7 day of November, 2002.

_Nathalie Hibble_
Notary Public

My Commission Expires: 10|4|2007

EXECUTION COPY

LOAN AND SECURITY AGREEMENT

BETWEEN

CARE REALTY FUNDING, LLC
(LENDER)

AND

ESSEX NORTH HEALTH SYSTEMS, LLC
(BORROWER)

DATED AS OF

November 7, 2002

## TABLE OF CONTENTS

Page

SECTION 1.  DEFINITIONS ......................................................................................... 1
1.1        Defined Terms ........................................................................................ 1

SECTION 2.  (RESERVED) ........................................................................................... 4

SECTION 3.  WORKING CAPITAL LOAN.................................................................. 4
3.1        Working Capital Loan............................................................................ 4
3.2        Term........................................................................................................ 4
3.3        Loan Promissory Note............................................................................ 5
3.4        Interest.................................................................................................... 5
3.5        Voluntary Prepayment of the Working Capital Loan and Loan
           Promissory Note..................................................................................... 5
3.6        Application of Prepayments................................................................... 5

SECTION 4.  SECURITY INTEREST AND PLEDGE ................................................. 5
4.1        Grant of Security Interest ...................................................................... 5
4.2        Rights of Lender..................................................................................... 6

SECTION 5.  RECOURSE GUARANTY ....................................................................... 6
5.1        Recourse Guaranty ................................................................................ 6

SECTION 6.  CLOSING; CONDITIONS OF LENDING ............................................. 7
6.1        Closing.................................................................................................... 7
6.2        Conditions of Loan Advances................................................................ 7
           6.2.1   Salomon Brothers Approval ..................................................... 7
           6.2.2   Borrower/Tenant Funds Exhausted........................................... 7
           6.2.3   Borrower/Tenant Funds Exhausted........................................... 7
           6.2.4   Loan Promissory Note............................................................... 7
           6.2.5   Security; Uniform Commercial Code Financing Statements...... 7
           6.2.6   Certificate as to Managers of the Borrower ............................. 7
           6.2.7   Certificates of Good Standing................................................... 8
           6.2.8   No Injunction, Etc. ................................................................... 8
           6.2.9   No Material Adverse Change..................................................... 8
           6.2.10  Receivables to Loan Balance and Census Levels ..................... 8
           6.2.11  Proceedings and Documents ..................................................... 8
           6.2.12  No Defaults ............................................................................... 8
           6.2.13  Taxes ......................................................................................... 8
           6.2.14  Status of Title............................................................................ 9
           6.2.15  Governmental Approvals ........................................................... 9
           6.2.16  Funding ..................................................................................... 9

SECTION 7.   REPRESENTATIONS AND WARRANTIES ............................................... 9
  7.1    Organization and Good Standing ............................................................... 9
  7.2    Power and Authority; Validity of Agreement ............................................ 9
  7.3    No Violation of Laws or Agreements ......................................................... 9
  7.4    Indebtedness ............................................................................................. 10
  7.5    Solvency ................................................................................................... 10
  7.6    Litigation; Government Regulation .......................................................... 10
  7.7    Taxes ........................................................................................................ 10
  7.8    Governmental Authorization .................................................................... 10
  7.9    Event of Default ....................................................................................... 10
  7.10   Full Disclosure ......................................................................................... 10
  7.11   Financial Statements ................................................................................ 11
  7.12   Title to Collateral .................................................................................... 11
  7.13   Continuing Liability ................................................................................. 11

SECTION 8.   AFFIRMATIVE COVENANTS .......................................................... 11
  8.1    Repayment of Obligations ........................................................................ 11
  8.2    Performance under Loan Documents ........................................................ 11
  8.3    Pursuit of Line of Credit .......................................................................... 11
  8.4    Existence and Good Standing ................................................................... 11
  8.5    Facility Operating Account ...................................................................... 11
  8.6    Interim Financial Information ................................................................... 12
  8.7    Annual Financial Statements .................................................................... 12
  8.8    Books and Records ................................................................................... 12
  8.9    Notifications ............................................................................................. 12
  8.10   Taxes ........................................................................................................ 12
  8.11   Additional Collateral Documentation ...................................................... 12
  8.12   Compliance ............................................................................................... 13

SECTION 9.   NEGATIVE COVENANTS ................................................................ 13
  9.1    Liens and Encumbrances .......................................................................... 13
  9.2    Transfer of Assets; Liquidation ............................................................... 13
  9.3    Use of Proceeds ....................................................................................... 13
  9.4    Use of Proceeds ....................................................................................... 13
  9.5    Use of Proceeds ....................................................................................... 13
  9.6    Defaults under Lease ................................................................................ 13

SECTION 10. EVENTS OF DEFAULT ..................................................................... 14
  10.1   Events of Default ..................................................................................... 14
  10.2   Acceleration of the Obligations ............................................................... 15
  10.3   Default Rate of Interest ............................................................................ 15

SECTION 11. RIGHTS AND REMEDIES AFTER EVENT OF DEFAULT ............................. 15
  11.1   Rights and Remedies ................................................................................ 15
  11.2   Application of Proceeds ............................................................................ 16
  11.3   Rights and Remedies Cumulative; Non-Waiver; Etc. ............................... 16

SECTION 12. PAYMENT OF EXPENSES ............................................................... 16
   12.1   Fees and Expenses .............................................................................. 16
   12.2   Notices ................................................................................................ 17

SECTION 13. MISCELLANEOUS ....................................................................... 18
   13.1   Survival of Agreements ...................................................................... 18
   13.2   Governing Law ................................................................................... 18
   13.3   Amendment ......................................................................................... 18
   13.4   Entire Agreement ............................................................................... 18
   13.5   Conflicts in Loan Documents ............................................................ 18
   13.6   Binding Effect .................................................................................... 18
   13.7   Captions ............................................................................................. 19
   13.8   Severability ........................................................................................ 19
   13.9   Indirect Means .................................................................................... 19
   13.10  No Third Party Beneficiaries ............................................................. 19
   13.11  Liability of Lender ............................................................................. 19
   13.12  No Joint Venture ................................................................................. 19
   13.13  Joint and Several Liability .................................................................. 19
   13.14  Collateral Assignment ........................................................................ 19

## LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT, made and entered into as of this 7th day of November, 2002, by and between ESSEX NORTH HEALTH SYSTEMS, LLC, a Massachusetts limited liability company ("Tenant" or "Borrower") and CARE REALTY FUNDING, LLC, a Delaware limited liability company (the "Lender").

## SECTION 1. DEFINITIONS.

1.1    Defined Terms.  For purposes of this Agreement, in addition to the terms defined elsewhere in this Agreement, the following terms shall have the meanings set forth below:

"Accounts" shall mean any and all present and future right to payment for goods sold or leased or services rendered, whether or not evidenced by an instrument or chattel paper, and whether or not earned by performance (including, without limitation, any and all accounts, accounts receivable, contract rights, instruments, documents, chattel paper, general intangibles and other obligations, including third-party reimbursable or third-party directly payable portion of healthcare accounts receivable, owing or to be owing to Borrower for the payment of money arising out of any sale or lease of medical products and supplies and/or rendition of medical, surgical, diagnostic or other professional medical services by Borrower, whether or not under any trade name(s) of Borrower, whether now existing or hereafter arising, including all rights (direct, third-party, third-party beneficiary or otherwise) to payment and/or reimbursement under any agreements with and payments from any obligors, customers, patients, residents or other persons or entities, all rights, remedies, guaranties, insurance, security interests and Liens in respect of the foregoing, all books, records (other than confidential medical records) and other property (whether movable, immovable, corporeal, incorporeal, real, personal or mixed, tangible or intangible (including, without limitation, all rights related thereto), whether now owned or hereafter acquired) evidencing, reflecting or related to the foregoing), and all proceeds of any of the foregoing.

"Agreement" or "this Agreement" shall include all amendments, modifications and supplements to this Agreement that have heretofore or may be hereafter executed by Borrower and Lender, and shall refer to this Agreement, and all such amendments, modifications and supplements, as the same may be in effect at the time such reference becomes operative.

"Business Day" shall mean any day which is not a Saturday, Sunday or public holiday.

"Closing Date" shall mean the date referred to in Paragraph 5.1 hereof.

"Collateral" shall mean and include the following:

(a)    All of Borrower's Accounts, and all of Borrower's money, contract rights, chattel paper, documents, deposit accounts, securities, investment property and instruments with respect thereto, and all of Borrower's rights, remedies, security, Liens and supporting obligations, in, to and in respect of the foregoing, including, without limitation, rights of

stoppage in transit, replevin, repossession and reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, guaranties or other contracts of suretyship with respect to the Accounts, deposits or other security for the obligation of any Account Debtor, and credit and other insurance;

(b)     All of Borrower's right, title and interest in, to and in respect of all goods relating to, or which by sale have resulted in, Accounts, including, without limitation, all goods described in invoices or other documents or instruments with respect to, or otherwise representing or evidencing, any Account, and all returned, reclaimed or repossessed goods;

(c)     The Facility Operating Account and all of Borrower's now owned or hereafter acquired deposit accounts to the extent Accounts for the proceeds of the Accounts are deposited in such accounts;

(d)     All of Borrower's general intangibles (including, but not limited to, payment intangibles) and other property of every kind and description with respect to, evidencing or relating to its Accounts, including, but not limited to, all existing and future customer lists, choses in action, claims, books, records, ledger cards, contracts, formulae, tax and other types of refunds, returned and unearned insurance premiums, and computer programs, information, software, records, and data, as the same relates to the Accounts; and

(e)     To the extent not listed above as original collateral, the proceeds (including, without limitation, insurance proceeds) and products of all of the foregoing.

Notwithstanding the foregoing, Collateral shall not include the Real Property (as defined in the Lease), the Facility (as defined in the Lease), or any other improvements located on the Real Property or any furniture, fixtures and equipment appurtenant to the Facility, or the security deposit or escrowed funds held pursuant to the Lease, or all licenses, Medicare and Medicaid provider agreements and all claims under insurance policies with respect to the foregoing.

"Event of Default" shall have the meaning specified in Section 10.1 hereof.

"Facility Operating Account" shall mean that bank account used solely as the operating account of the Facility into which receivables, collections or payments are to be deposited.

"Governmental Entity" shall mean the United States of America, any State, any political subdivision of a State and any agency or instrumentality of the United States of America or any State or political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government. Payments from Governmental Entities shall be deemed to include payments governed under the Social Security Act (42 U.S.C. §§ 1395 et seq.), including payments under Medicare, Medicaid and CHAMPUS, and payments administered or regulated by the Provider Reimbursement Review Board or the Administrator of the Centers for Medicare and Medicaid Services (formerly known as the Health Care Financing Administration).

"Lender Interest" shall mean, collectively, all rights, title and interests of Lender, as a secured party or otherwise, in or to all or any of the Collateral, including, without limitation, all rights and remedies with respect thereto, under the Uniform Commercial Code, under this Agreement or any other Loan Document or otherwise available at law or in equity.

"Landlord" shall mean 265 Essex Street, LLC, a party to the Lease dated as of August 23, 2002.

"Lease" shall mean that lease agreement between 265 Essex Street, LLC and Essex North Health Systems, LLC, dated as of August 23, 2002, including all amendments, modifications and supplements to thereto that have heretofore or may be hereafter executed by Landlord and Tenant, and shall refer to the lease agreement, and all such amendments, modifications and supplements, as the same may be in effect at the time such reference becomes operative.

"Leased Facility" shall mean the skilled nursing home facility located at 265 Essex Street, Beverly, Massachusetts, leased by Tenant from Landlord.

"Licenses" shall mean all licenses, permits, certificates of need or other grants of authority obtained or required to be obtained by Borrower from any Governmental Entity, including the United States government, the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services or any state or local authority in connection with the construction, ownership or operation of the Leased Facility.

"Lien" shall mean any lien, mortgage, deed of trust, security interest, tax lien, pledge, hypothecation, assignment, preference, priority, restraint or restriction on transfer, other charge or encumbrance, or any other type of preferential arrangement, of any kind or nature whatsoever, by or with any Person (including, without limitation, any conditional sale or title retention agreement), whether arising by contract, operation of law, judicial process or otherwise.

"Loan Advance" shall mean a written request by Borrower for Lender to fund the Working Capital Loan pursuant to the terms and conditions herein.

"Loan Documents" shall mean and collectively refer to this Agreement and any and all agreements, instruments and documents, including, without limitation, loan agreements, notes, consents, assignments, contracts, notices, security agreements, and all other written matter whether heretofore, now or hereafter executed by Borrower and delivered to Lender with respect to this Agreement or with respect to the transactions contemplated by this Agreement.

"Material Adverse Effect" shall mean a material adverse effect on the business, financial condition, assets or prospects of Borrower as a result of any event, condition, circumstance or contingency.

"Obligations" shall mean and include all amounts due and payable under this Agreement, together with any and all liabilities associated with payment, performance and compliance with the terms of this Agreement or any other Loan Document.

"Property" shall mean property of all kinds, movable, immovable, corporeal, incorporeal, real, personal or mixed, tangible or intangible (including, without limitation, all rights relating thereto), whether owned or acquired on or after the date of this Agreement.

"Tenant" shall mean Essex North Health Systems, LLC, a party to the Lease dated as of August 23, 2002.

"Termination Date" shall mean the earlier of (i) March 15, 2003; (ii) the date of termination by the Lender of this Agreement after the occurrence of an Event of Default; (iii) such date as is mutually agreed upon in writing by the parties hereto; (iv) the date after all Obligations have been paid in full; or (v) th date on which Lender issues a written demand to Borrower for payment of Borrower's obligations pursuant to Section 3.2.


## SECTION 2. (RESERVED).


## SECTION 3. WORKING CAPITAL LOAN.

3.1    Working Capital Loan. The Lender hereby establishes, subject to the terms and conditions of this Agreement and, in reliance upon the representations and warranties made hereunder, a one-time Working Capital Loan in favor of Borrower in the aggregate principal amount of up to Five Hundred and Fifty Thousand and No/100 Dollars ($550,000.00) and agrees to make a Loan Advance to the Borrower, upon the terms and conditions set forth in herein. The Lender shall have no obligation to lend funds at any time when an Event of Default exists or when there exists any event or condition that, with lapse of time, giving notice or making such advance would constitute an Event of Default. Borrower□s request for a Loan Advance shall be written.

3.2    Term.

(a) Unless terminated sooner in accordance with the terms and conditions of this Agreement, the initial term of the Working Capital Loan will be the earlier of (i) March 15, 2003; (ii) the date of termination by the Lender of this Agreement after the occurrence of an Event of Default; (iii) such date as is mutually agreed upon in writing by the parties hereto; (iv) the date after all Obligations have been paid in full; or (v) the date on which Lender issues a written demand to Borrower for payment of Borrower's obligations pursuant to Section 3.2(b).

(b) As promptly after the execution of this Agreement as possible, Borrower shall make applications with banking corporations or other similar lenders for a line of credit. If Lender identifies or Borrower negotiates a line of credit on commercially reasonable terms, and Lender consents to execute an Intercreditor Agreement with the identified lender, the Termination Date of the Working Capital Loan shall convert to one of demand and shall be the date on which Lender issues a written demand to Borrower for payment of Borrower's obligations under this Agreement. In the event that the Termination Date converts to one of demand, Lender shall forbear issuing a written demand for payment during the period between identification of the line of credit lender and

the closing of the line of credit, provided that Borrower shall promptly and diligently exert its best efforts to close the line of credit.

3.3    Loan Promissory Note. Contemporaneously with this Agreement, Borrower will execute and deliver the Loan Promissory Note to evidence Borrower's obligation to repay any Working Capital Loan Advances made under the Working Capital Loan. The outstanding principal amount of the Loan Promissory Note at any given time shall be the aggregate amount of all Loan Advances made under the Working Capital Loan, less all payments of principal theretofore paid by the Borrower. The outstanding principal amount of the Loan Promissory Note shall be due and payable on the Termination Date.

3.4    Interest.

(a) Amount. The Working Capital Loan and the Loan Promissory Note shall bear, and the Borrower shall pay, interest from the Closing Date on the unpaid principal balance thereof at the daily compounded interest rate of fifteen (15) percent. The Lender shall send to the Borrower statements of account due hereunder, which statements shall be considered correct and conclusively binding on the Borrower absent manifest error. Any failure of the Lender to send such statements shall not release the Borrower of its obligation to pay promptly all sums when and as due hereunder.

(b) Computation. Interest shall be compounded daily until paid.

3.5    Voluntary Prepayment of the Working Capital Loan and Loan Promissory Note. The Borrower shall have the right at any time or from time to time, upon at least five (5) days prior notice to the Lender, to prepay the Working Capital Loan and the Loan Promissory Note, in whole or in part, without premium or penalty; provided however, that (i) each partial prepayment of the Working Capital Loan and the Loan Promissory Note shall be in an aggregate principal amount of at least $5,000, or an integral multiple thereof, (ii) interest on the amount prepaid, accrued to the date of prepayment shall be paid on such date or prepayment, and (iii) the acceptance of any such prepayment when there exists an Event of Default shall not constitute a waiver, release or accord and satisfaction thereof.

3.6    Application of Prepayments. All prepayments of the Working Capital Loan and the Loan Promissory Note shall be applied first to accrued and outstanding interest due and then to principal.

## SECTION 4. SECURITY INTEREST AND PLEDGE

4.1    Grant of Security Interest

(a)    As general and continuing collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of all Obligations and in order to induce Lender to enter into this Agreement and, among other things, make the Loan as provided herein, subject to limitations, if any, of applicable law, Borrower hereby, assigns, conveys, mortgages, pledges, hypothecates, transfers and grants to Lender a security interest

in and first lien (except for Permitted Liens) on all of Borrower's right, title and interest in and to the Collateral, whether now owned or hereafter acquired.

(b)    All Collateral heretofore, herein or hereafter given or granted to Lender by Borrower shall secure payment of all of the Obligations.  Lender shall be under no obligation to proceed against any or all of the Collateral before proceeding directly against the Borrower.

4.2    Rights of Lender.

(a)    Borrower is authorized to collect amounts owing to it with respect to the Collateral, provided that Lender may, at any time after funding the Working Capital Loan curtail or terminate said authority upon prior written notice.  Any Collateral Proceeds, when collected by Borrower, whether consisting of checks, notes, drafts, bills of exchange, money orders, commercial paper of any kind whatsoever, or other documents, received as payment in respect of any Collateral, shall be promptly deposited by such Borrower in precisely the form received, except for its endorsement when required, in the Working Capital Escrow Account, and until so turned over, shall be deemed to be held in trust by such Borrower for and as Lender's property and shall not be commingled with any of either Borrower's other funds.  Such Collateral Proceeds, when deposited, shall continue to be Collateral for all of the Obligations and shall not constitute payment thereof until applied as hereinafter provided.

(b)    Lender may at any time following the funding of the Working Capital Loan, notify Account Debtors to the effect that the Accounts Receivable have been assigned to Lender and that payments shall be made directly to the Facility Operating Account or as Lender shall otherwise direct until the Lender has collected an amount equal to all amounts outstanding under the Working Capital Loan and provided that there shall exist no Event of Default.  Upon the request of Lender, Borrower will so notify such Account Debtors and will indicate on all bills that payments shall be made directly to the Facility Operating Account or as Lender shall otherwise direct. Lender may, in its own name or in the name of others, communicate with Account Debtors in order to verify with them, to Lender's satisfaction, the existence, amount and terms of any Accounts Receivable.  Nothing contained in this Section 4.2(b) is intended to violate the reassignment of claims under the Social Security Act. Following the occurrence of an Event of Default, Borrower shall continue to have government payors, including but not limited to Medicare, Medicaid and CHAMPUS, direct all payments to Borrower to the Facility Operating Account.

(c)    Lender agrees to release the Collateral promptly upon (i) payment in full of all Obligations; and (ii) the payment by Borrower of all reasonable costs and expenses incurred by Lender in connection with such release of the Collateral.

## SECTION 5. RECOURSE GUARANTY

5.1    Recourse Guaranty.  Borrower acknowledges that Lender would not have entered into this Loan and Security Agreement without Borrower's Members John G. Albert and Dianne M. Barry (individually a "Guarantor" and collectively the "Guarantors") jointly and severally, absolutely and

unconditionally guarantying to Lender the prompt and unconditional payment of the Obligations of Borrower by executing and delivering herewith a recourse guaranty (attached hereto and made a part hereof as Exhibit A), to Lender, its successors and assigns.

## SECTION 6. CLOSING; CONDITIONS OF LENDING.

6.1    <u>Closing</u>.  The closing date shall be the date on which Lender funds Borrower⍰s written request for a Loan Advance.

6.2    <u>Conditions of Loan Advances</u>.  The obligation of the Lender to make a Loan Advance under this Agreement is subject to the following conditions precedent:

6.2.1    <u>Salomon Brothers Approval</u>.  Lender shall have received the approval of Salomon Brothers Realty Corp. to the transactions contemplated by this Agreement.

6.2.2    <u>Borrower/Tenant Funds Exhausted</u>.  Borrower shall have provided Lender with financial statements demonstrating to the satisfaction of the Lender, in its sole and absolute discretion, that Borrower (i) has fully satisfied all working capital funding obligations of Tenant under Sections 7.10.1 and 7.10.2 of the First Amendment to the Lease, by having deposited One Hundred Fifty Four Thousand Dollars ($154,000.00) into the Facility Operating Account and having availed itself of all currently available rent deferrals; and, (ii) has expended funds available in the Facility Operating Account such that there are not sufficient funds to cover 30 days of operations of the Facility based on the then currently approved Sixty-Day Operating Budget.

6.2.3    <u>Borrower Disbursements</u>.  The Borrower shall have made no disbursements from the Facility Operating Account to Borrower, Borrower's Members, Borrower's Managers, or Borrower's affiliates, except as authorized in Section 15.2 of the First Amendment.

6.2.4    <u>Loan Promissory Note</u>.  The Loan Promissory Note shall have been duly authorized, executed and delivered to the Lender by the Borrower, shall be in full force and effect and no default shall exist thereunder.

6.2.5    <u>Security; Uniform Commercial Code Financing Statements</u>.  All filings of Uniform Commercial Code Financing Statements and all other filings or recordations necessary to create and perfect security interests in the Collateral shall have been duly authorized, executed and, as necessary, filed and confirmation thereof received in a form acceptable to the Lender that such security interests constitute valid and perfected first priority security interests.

6.2.6    <u>Certificate as to Managers of the Borrower</u>.  The Lender shall have received a Certificate as to Managers of the Borrower certifying that attached thereto is a true and complete copy of the Operating Agreement of the Tenant as in effect on the date of such certification authorizing the execution, delivery and performance of this Agreement and the other Loan Documents and certification that such Agreement is still in effect and has not been amended since such date.

6.2.7   <u>Certificates of Good Standing</u>. On the Closing Date, the Lender shall have received certificates as of a recent date of the Borrower's good standing under the laws of the Commonwealth of Massachusetts and any other states where the Borrower is authorized to transact business.

6.2.8   <u>No Injunction, Etc.</u>  No action, proceeding, investigation, regulation or legislation shall have been instituted, threatened or proposed before any court, governmental agency or legislative body to enjoin, restrain, or prohibit, or to obtain substantial damages in respect of, or which is related to or arises out of this Agreement or the consummation of the transactions contemplated by it, or which, in the Lender's sole discretion, would make it inadvisable to consummate the transactions contemplated by this Agreement.

6.2.9   <u>No Material Adverse Change</u>. There shall not have occurred any material adverse change in the business, business prospects, financial condition or results of operations of the Borrower or the Facility, or any event, condition or state of facts which would be expected materially and adversely to affect the business, business prospects, financial condition or results of operations of the Borrower or the Facility.

6.2.10   <u>Receivables to Loan Balance and Census Levels.</u>  The accounts receivables aged zero to one hundred and twenty (120) days, as recorded under generally accepted accounting principles, shall not be less than two (2) times the existing loan balance. Borrower's then current census levels shall be at least 95% of the census levels projected by Borrower in pro formas provided to Lender and attached hereto as Exhibit B.

6.2.11   <u>Proceedings and Documents</u>. All opinions, certificates, the Loan Promissory Note and all other instruments and proceedings in connection with the transactions contemplated by this Agreement shall be satisfactory in form and substance to the Lender and its counsel. The Lender shall have received copies of all documentation, instruments, and other evidence as the Lender may reasonably request, in form and substance satisfactory to the Lender and its counsel, with respect to the transactions contemplated by this Agreement and the taking of all actions in connection therewith. Borrower agrees that Lender has no liability to make the Working Capital Loan available to Borrower unless Borrower executes or causes to be executed such documentation described hereinabove as Lender in its sole discretion requires.

6.2.12   <u>No Defaults</u>. At the time of any borrowing hereunder, the Borrower shall be in compliance with all the terms and provisions on its part to be observed or performed as set forth in this Agreement and the Loan Documents, and no Event of Default or default pursuant to this Agreement or the other Loan Documents, nor any event which upon notice or lapse of time or both would constitute such an Event of Default or default, shall have occurred and be continuing at the time of such borrowing.

6.2.13   <u>Taxes</u>. All taxes, fees and other charges in connection with the execution, delivery, recording, filing and registration of any of the Loan Documents shall have been paid by the Borrower.

6.2.14 <u>Status of Title</u>. The Borrower shall be the owner of the Collateral free and clear of any liens and encumbrances, except for those agreed to by Lender.

6.2.15 <u>Governmental Approvals</u>. All necessary approvals, authorizations and consents, if any are required, of all governmental bodies (including courts) having jurisdiction with respect to the Collateral and the transactions contemplated by this Agreement shall have been obtained, including without limitation a valid Certificate of Need.

6.2.16 <u>Funding</u>. At such time as Borrower meets the financial requirements set forth in this Section 6.2, including the financial requirements of Section 6.2.2 above, Borrower shall make written application to the Lender to fund the loan. Lender shall promptly fully fund the entire loan by depositing $550,000.00 into the Escrow Funds account established by the Escrow Agent. In the event that the funds available in the Facility Operating Account are insufficient to meet the current obligations of the Facility for the next succeeding two weeks of operations, based on the last jointly approved Sixty-Day Operating Budget, and the Borrower shall not have requested funding of the loan, then Lender is authorized to fund the loan proceeds into the Escrow Funds account.

## SECTION 7. REPRESENTATIONS AND WARRANTIES.

In order to induce Lender to enter into this Agreement and to make the loan and advances hereunder, Borrower makes the following warranties and representations to Lender:

7.1    <u>Organization and Good Standing</u>. Borrower is duly organized and existing and in good standing under the laws of the Commonwealth of Massachusetts, has the power and authority to carry on its business as now conducted, and is qualified to do business in Massachusetts and all other states in which the nature of its business or the ownership of its properties requires such qualification.

7.2    <u>Power and Authority; Validity of Agreement</u>. Borrower has the power and authority under the law of its state of organization and under its operating agreement to enter into and perform the Loan Documents to the extent it is a party thereto; all actions necessary or appropriate for Borrower's execution and performance of the Loan Documents, to the extent it is a party thereto, have been taken; and, upon their execution, the Loan Documents will constitute the valid and binding obligations of Borrower enforceable in accordance with their terms.

7.3    <u>No Violation of Laws or Agreements</u>. The entering into and performance of the Loan Documents by Borrower will not: (a) to the best of Borrower's knowledge and belief after investigation, violate any provisions of any law or regulation, federal, state or local, applicable to Borrower, (b) violate any provision of the operating agreement of Borrower or (c) result in any breach or violation of, or constitute a default under, any agreement or instrument by which Borrower or its respective property is bound.

7.4    Indebtedness. Borrower has no presently outstanding indebtedness or obligations including contingent obligations and obligations under leases of property from others, other than indebtedness permitted by Paragraph 8.1.

7.5    Solvency. Borrower (i) does not intend to, and does not believe that it will, incur debts or liabilities beyond its ability to pay as such debts and liabilities mature, and (ii) is not engaged in a business or transaction, or about to engage in a business or transaction, for which its property would constitute unreasonably small capital after giving due consideration to the prevailing practice and industry in which it is engaged.

7.6    Litigation; Government Regulation. There are no actions, suits or proceedings pending or, to the best of Borrower's knowledge and belief after investigation, threatened against or affecting Borrower at law or in equity before any court or administrative officer or agency which might have a Material Adverse Effect on the business or financial condition of Borrower or impair Borrower's ability to perform its obligations under this Agreement and the other Loan Documents. Borrower is not in violation of or in default under any applicable statute, rule, order, decree, writ, injunction, or regulation of any governmental body (including any court) where such violation would have a Material Adverse Effect upon the Collateral, or Borrower's business, property, assets, operations or condition, financial or otherwise.

7.7    Taxes. Borrower is not delinquent in the payment of any taxes which have been levied or assessed by any governmental authority against it or its assets, except to the extent such taxes are being contested in good faith by appropriate proceedings and with due diligence by Borrower. Borrower has timely filed all tax returns which are required by law to be filed, and has paid all taxes shown on said returns and all other assessments or fees levied upon Borrower or upon its properties to the extent that such taxes, assessments or fees have become due, except such amounts thereof as are being contested in good faith and for which adequate provision has been made for such payment. To the knowledge of the officers of Borrower, no material controversy in respect to income taxes is pending or threatened.

7.8    Governmental Authorization. To the best of Borrower's knowledge and belief after investigation, no authorization, consent, or approval of any governmental authority is required for the execution, delivery, and performance of the Loan Documents or the consummation of the transactions contemplated thereby. To the best of Borrower's knowledge and belief after investigation, Borrower has, and is in good standing with respect to, all governmental approvals, permits, certificates, inspections, consents, and franchises necessary to conduct its business and to own or lease and operate its properties as now owned or leased by it.

7.9    Event of Default. No event has occurred and is continuing which constitutes an Event of Default or would constitute such an Event of Default after notice or lapse of time or both.

7.10    Full Disclosure. None of the Loan Documents, nor any statements furnished by or on behalf of Borrower to Lender in connection with the Loan Documents, contain any untrue statements of a material fact or omit a material fact necessary to make the statements contained therein or herein not misleading. To the best of Borrower's knowledge and belief, there is no fact which Borrower has not

disclosed to Lender in writing which materially affects adversely or, to the best of Borrower's knowledge and belief, will materially affect adversely the Collateral or the ability of Borrower to perform its Obligations.

7.11   Financial Statements.  All financial statements of Borrower delivered to Lender by Borrower contain no material misstatement or omission, and fairly present the financial position, assets and liabilities of Borrower as of the respective dates thereof and the results of operations for the respective periods then ended.  Since the respective dates of the last of such financial statements, there has been no material adverse change in the assets, liabilities or financial position of Borrower or in the results of its operations, and Borrower has not incurred any obligations or liability which would have a Material Adverse Effect on its business operations or the Collateral.

7.12   Title to Collateral.  Borrower has good, indefeasible, and merchantable title to and ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those in favor of Lender.

7.13   Continuing Liability.  Borrower's obligations and duties to Lender under this Agreement shall not be limited by the term of the Loan Promissory Note and, as to any act or occurrence prior to payment in full and satisfaction of said Loan Promissory Note which gives rise to liability hereunder, shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of said Loan Promissory Note and this Agreement.

# SECTION 8. AFFIRMATIVE COVENANTS.

Until payment in full of all Obligations of Borrower to Lender, Borrower covenants and agrees that, unless Lender gives its prior consent in writing, it will:

8.1   Repayment of Obligations.  Subject to Section 4, promptly repay the Obligations when due according to the terms of this Agreement and the other Loan Documents.

8.2   Performance under Loan Documents.  Perform all Obligations required to be performed by it under the terms of this Agreement and the other Loan Documents and/or any other agreements now or hereafter existing or entered into between Borrower and Lender.

8.3   Pursuit of Line of Credit.  Promptly make applications to banking corporations for a line of credit.

8.4   Existence and Good Standing.  Preserve and maintain its existence as a limited liability company and its good standing in all states in which it conducts business and the validity of all its Licenses required in the conduct of its business.

8.5   Facility Operating Account.  To the maximum extent permitted by applicable law, establish and maintain a facility operating account with Landlord into which receivables, collections or payments from Governmental Entity reimbursement programs are to be deposited;

8.6   Interim Financial Information. Furnish Lender within twenty (20) days of the Closing, and no later than twenty (20) days following the end of each month thereafter, unaudited monthly financial statements of Borrower in form and substance as reasonably required by Lender, including a balance sheet, a statement of income, a statement of payables, and a statement of cash flows, and a certificate signed by a Managing Member of Borrower stating that the financial statements fairly present the financial condition of Borrower as of the date and for the periods covered and were prepared in accordance with GAAP consistently applied.

8.7   Annual Financial Statements. Furnish to Lender within ninety (90) days after the close of each fiscal year annual financial statements of Borrower, including the financial statements and information required under Section 7.4 hereof, which financial statements shall be prepared in accordance with GAAP and shall be certified by the Managing Member of Borrower.

8.8   Books and Records. Keep and maintain satisfactory and adequate books and records of account with respect to the Collateral and make or cause the same to be made available to Lender, or its agents, for inspection and to make extracts thereof and permit Lender to discuss the contents of same with partners of Borrower.

8.9   Notifications. Promptly notify Lender in writing of (i) the institution of any litigation, the commencement of any administrative proceedings, the happening of any event or the assertion or threat of any claim which, if resolved in favor of a party adverse to Borrower, might reasonably be expected to have a Material Adverse Effect on the Collateral, or would result in the occurrence of any Event of Default hereunder; (ii) the occurrence of an Event of Default; and (iii) the opening of any new place of business, or the relocation of any Collateral to a location at which Lender does not have a perfected security interest.

8.10   Taxes. Pay and discharge all taxes, assessments or other governmental charges or levies imposed on it or any of its property or assets prior to the date on which any penalty for non-payment or late payment is incurred, unless the same are (i) currently being contested in good faith by appropriate proceedings and (ii) are covered by appropriate reserves maintained in accordance with GAAP.

8.11   Additional Collateral Documentation.

(a)   Execute, deliver and record, at any time upon Lender's request and in form and substance reasonably satisfactory to Lender, any of the following instruments in favor of Lender as additional collateral for the indebtedness hereunder: (i) to the extent permitted by applicable law, specific assignments by Borrower of Licenses and (ii) assignments or like agreements specifically covering any of the Collateral.

(b)   If required or applicable to the Collateral, give, execute, deliver and file in the appropriate governmental offices any instrument necessary to perfect a security interest in accounts and the proceeds thereof under the provisions of the Federal Assignment of Claims Act.

8.12   Compliance.  Comply in all respects with all local, state and federal laws and regulations applicable to the Leased Facility, and the provisions and requirements of all Licenses held by Borrower, except where the failure to so comply could not reasonably be expected to have a Material Adverse Effect; and notify Lender immediately in detail of any actual or alleged failure to comply with or perform, breach, violation or default under any such laws or regulations or under the terms of any of such Licenses, or grants of authority, or of the occurrence or existence of any facts or circumstances which with the passage of time, the giving of notice or otherwise could create such a breach, violation or default or could occasion the termination of any of such Licenses, or grant of authority, except where the failure to comply with or perform, breach, violation or default could not reasonably be expected to have a Material Adverse Effect.

## SECTION 9. NEGATIVE COVENANTS.

So long as any Obligations of Borrower remain outstanding hereunder, Borrower covenants and agrees that it will not:

9.1   Liens and Encumbrances.  Create, permit or suffer the creation or existence of any liens, security interests, or any other encumbrances on any of the Collateral except in favor of Lender as security for the indebtedness hereunder or in favor of Landlord under the Lease.

9.2   Transfer of Assets; Liquidation.  Sell, lease, transfer or otherwise dispose of its leasehold interest in the Leased Facility without the prior written consent of Lender.

9.3   Use of Proceeds.  Use any of the proceeds of the Working Capital Loan, directly or indirectly, to purchase or carry margin securities within the meaning of Regulation U of the Board of Governors of the Federal Reserve System; or engage as its principal business in the extension of credit for purchasing or carrying such securities.

9.4   Borrower Disbursements.  Make any disbursements from the Facility Operating Account to Borrower, Borrower's Members, Borrower's Managers, or Borrower's affiliates, except as authorized in Section 15.2 of the First Amendment.

9.5   No Material Adverse Change.  Cause or allow to occur any material adverse change in the business, business prospects, financial condition or results of operations of the Borrower or the Facility, or any event, condition or state of facts which would be expected materially and adversely to affect the business, business prospects, financial condition or results of operations of the Borrower or the Facility.

9.6   Defaults under Lease.  Borrower shall not cause or permit any member, officer or affiliate to cause a default or Event of Default under the Lease, which default or Event of Default shall not be cured within any applicable grace or cure period.

## SECTION 10. EVENTS OF DEFAULT.

10.1   Events of Default. In addition to any other event referred to herein, the occurrence of which, by the terms hereof, constitutes an Event of Default hereunder, the occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

(a)    Borrower shall fail to make any payment of principal, interest, fees, expenses or other amounts due to Lender under this Agreement, the Loan Promissory Note or under any of the other Loan Documents as and when the same shall become due and payable.

(b)    There shall occur any default or breach by Borrower of any term, condition, covenant, provision or warranty in the Lease.

(c)    Borrower shall fail to observe and perform any of the other covenants or agreements on its part to be observed or performed under this Agreement or under any of the other Loan Documents.

(d)    Any representation or warranty of Borrower under this Agreement or under any of the other Loan Documents shall be untrue in any material respect.

(e)    If custody or control of any substantial part of the property of Borrower shall be assumed by any governmental agency or any court of competent jurisdiction at the direction of any governmental agency; if any License to operate the Leased Facility or any other material License shall be suspended, revoked, not renewed at expiration or otherwise terminated due to Borrower's action or inaction; or if any governmental regulatory authority or judicial body shall make any other final non-appealable determination which, in any of the foregoing instances, might reasonably be expected to have a Material Adverse Effect.

(f)    If Borrower becomes insolvent, bankrupt or generally fails to pay its debts as such debts become due; or is adjudicated insolvent or bankrupt; or admits in writing its inability to pay its debts; or shall suffer a custodian, receiver or trustee for it or substantially all of its property to be appointed and if appointed without its consent; or makes an assignment for the benefit of creditors; or suffers proceedings under any law related to bankruptcy, insolvency, liquidation or the reorganization, readjustment or the relief of debtors to be instituted against it; or if proceedings under any law related to bankruptcy, insolvency, liquidation, or the reorganization, readjustment or the relief of debtors is instituted or commenced by Borrower; or if any order for relief is entered relating to any of the foregoing proceedings; or if Borrower shall call a meeting of its creditors with a view to arranging a composition or adjustment of its debts; or if Borrower shall by any act or failure to act indicate its consent to, approval of or acquiescence in any of the foregoing. For purposes of this Section 10.1(f), "insolvent" and "insolvency" shall be defined to mean the inability to pay debts as they become due.

(g)    Any order, judgment or decree shall be entered by any court of competent jurisdiction, approving a petition seeking reorganization of Borrower of all or a substantial part of the assets of a Borrower, or appointing a receiver, sequestrator, trustee or liquidator of Borrower or any of its or his property.

(h)    If at any time during the Term, patient census at the facility shall drop below 95% of the projected census levels contained in the pro formas provided to Lender by Borrower and attached hereto as Exhibit B.

(i)    If at any time during the Term, the Borrower makes any disbursements from the Facility Operating Account to Borrower, Borrower's Members, Borrower's Managers, or Borrower's affiliates, except as authorized in Section 15.2 of the First Amendment.

(j)    If at any time during the Term, there shall have occurred any material adverse change in the business, business prospects, financial condition or results of operations of the Borrower or the Facility, or any event, condition or state of facts which would be expected materially and adversely to affect the business, business prospects, financial condition or results of operations of the Borrower or the Facility.

10.2    _Acceleration of the Obligations_.  Without in any way limiting the right of Lender to demand payment of any portion of the Obligations pursuant to the provisions of this Agreement upon and after an Event of Default, all of the Obligations may, at the option of Lender, upon written notice to Borrower, be declared, and immediately shall become due and payable, anything in the Loan Promissory Note or other contract evidencing any such Obligation or in the Loan Documents or in any other agreement to the contrary notwithstanding.

10.3    _Default Rate of Interest_.  Upon and after the occurrence of an Event of Default, to the extent permissible by law, all of the Obligations shall continue to bear interest, compounded, plus, at the election of Lender evidenced by its written notice to Borrower, additional post-default interest of the highest interest rate permitted by law until either such Event of Default is cured to Lender's satisfaction or otherwise waived in writing by Lender or the Obligations are paid in full and this Agreement is terminated.

## SECTION 11.  RIGHTS AND REMEDIES AFTER EVENT OF DEFAULT.

11.1    _Rights and Remedies_.  Upon the occurrence of any Event of Default and acceleration of the Obligations pursuant to Section 9.2 hereof, Lender shall have, in addition to all other rights and remedies which Lender may have under this Agreement, the other Loan Documents, and applicable law, the following rights and remedies, all of which may be exercised with or without further notice to Borrower:  (a) to declare the balance of the Loan Promissory Note to be forthwith due and payable, both as to principal and interest, without presentment, demand, protest, or other notice of any kind, all of which are hereby expressly waived by Borrower, anything contained herein or in any other Loan Documents to the contrary notwithstanding; (b) all of the rights and remedies of a secured party under the Uniform Commercial Code of the Commonwealth of Massachusetts or any other

state where such rights and remedies are asserted; (c) to foreclose the liens and security interests created under this Agreement and the other Loan Documents or under any other agreement relating to the Collateral, by any available judicial procedure or without judicial process; and/or (d) have a receiver appointed as a matter of right without regard to the solvency of the Borrower, for the purpose of preserving the Collateral, preventing waste, and to protect the rights accruing to the Lender by virtue of this Agreement and the other Loan Documents.

11.2    Application of Proceeds.  Subject to Section 4, the net cash proceeds resulting from the collection, liquidation, sale, lease or other disposition of the Collateral shall be applied first to the expenses (including all attorney's fees) of retaking, holding, storing, processing and preparing for sale, selling, collecting, liquidating and the like, and then to the satisfaction of all Obligations, applications as to particular Obligations or against principal or interest to be in Lender's absolute discretion.    Lender shall remit to Borrower or the Person entitled thereto any surplus remaining after all Obligations have been paid in full.

11.3    Rights and Remedies Cumulative; Non-Waiver; Etc.  The enumeration of Lender's rights and remedies set forth in this Agreement is not intended to be exhaustive and the exercise by Lender of any right or remedy, shall not preclude the exercise of any other rights or remedies, all of which shall be cumulative, and shall be in addition to any other right or remedy given hereunder, under the Loan Documents or under any other agreement between Borrower or Lender or which may now or hereafter exist in law or in equity or by suit or otherwise. The Lender shall not be required to pursue its rights and remedies in any particular sequence.  No delay or failure to take action on the part of Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude other or further exercise thereof or the exercise of any other right, power or privilege or shall be construed to be a waiver of any Event of Default.  No course of dealing between Borrower and Lender or its affiliates, agents or employees shall be effective to change, modify or discharge any provision of this Agreement or to constitute a waiver of any Event of Default.  Lender shall not, under any circumstances or in any event whatsoever, have any liability for any error, omission or delay of any kind occurring in the liquidation of the Collateral or for any damages resulting therefrom.

## SECTION 12. PAYMENT OF EXPENSES.

12.1    Fees and Expenses.  Subject to Section 4, Borrower will pay or reimburse Lender upon demand for all expenses (including, without limitation, attorney's and paralegal's expenses) incurred or paid by Lender in connection with: (a) the negotiation and preparations of the First Amendment and this Loan and Security Agreement; (b) any litigation, contest, dispute, suit, proceeding or action (whether instituted by Lender, Borrower or any other Person) in any way relating to the Collateral, this Agreement or the other Loan Documents; (c) any attempt to enforce any rights of Lender against Borrower or the other Loan Documents; (d) any attempt to inspect, verify, protect, collect, sell, liquidate or otherwise dispose of the Collateral; and (e) the filing and recording of all documents required by Lender to perfect Lender's liens in the Collateral, including without limitation, any documentary stamp tax or any other taxes incurred because of such filing or recording; any other rights and remedies which Lender may reasonably elect to pursue pursuant to Section 10.

12.2   Notices.  All notices required to be given to any of the parties hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes when presented personally to such party or sent by telecopier, overnight delivery, or by certified or registered mail, return receipt requested, to such party at its address or telecopier set forth below:

|  |  |
|---|---|
| Borrower/Tenant: | Essex North Health Systems, LLC<br>c/o Landmark Health Solutions, LLC<br>57 Wingate Street<br>Haverhill, MA  01830<br>Attn: John G. Albert |
| With a Copy to: | Donoghue Barrett & Singal, P.C.<br>1 Beacon Street, Suite 1320<br>Boston, MA  01208<br>Attn:  Nina G. Edwards, Esq. |
| Landlord: | 265 Essex Street, LLC<br>c/o Care Realty, LLC<br>411 Hackensack Avenue<br>Seventh Floor<br>Hackensack, NJ  07601<br>Attn: Warren D. Cole |
| With a Copy to: | Proskauer Rose LLP<br>1233 20th Street N.W.<br>Suite 800<br>Washington, DC 20036<br>Attn:  Joseph E. Casson, Esq.<br>Telephone:  (202) 416-6894<br>Facsimile:  (202) 418-6899 |
| Lender: | Care Realty Funding, LLC<br>c/o Care Realty, LLC<br>411 Hackensack Avenue<br>Seventh Floor<br>Hackensack, NJ  07601<br>Attn: Warren D. Cole |
| With a Copy to: | Proskauer Rose LLP<br>1233 20th Street N.W.<br>Suite 800<br>Washington, DC 20036<br>Attn:  Joseph E. Casson, Esq.<br>Telephone:  (202) 416-6894<br>Facsimile:  (202) 418-6899 |

Such notice shall be deemed to be given when sent, if sent by telecopier, when received if delivered personally, one (1) Business Day following the date deposited with a national overnight carrier, or three days after the date mailed if sent by certified or registered mail. Any notice of any change in such address shall also be given in the manner set forth above. Whenever the giving of notice is required, the giving of such notice may be waived in writing by the party entitled to receive such notice.

## SECTION 13. MISCELLANEOUS.

13.1    Survival of Agreements. All agreements, representations and warranties continued herein or made in writing by or on behalf of Borrower in connection with the transactions contemplated hereby shall survive the execution and delivery of this Agreement and the other Loan Documents and the repayment of the Working Capital Loan. Borrower further agrees that to the extent Borrower makes a payment or payments to Lender, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy, insolvency or similar state or federal law, common law or equitable cause, then, to the extent of such payment or repayment, the Obligation or part thereof intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been received by Lender.

13.2    Governing Law. This Agreement has been executed, delivered and accepted at, and shall be deemed to have been made at Beverly, Massachusetts, and shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the internal laws (as opposed to conflicts of law provisions) of the Commonwealth of Massachusetts.

13.3    Amendment. This Agreement and the other Loan Documents cannot be amended, changed, discharged or terminated orally, but only by an instrument in writing signed by Lender and Borrower.

13.4    Entire Agreement. This Agreement and the other documents, certificates and instruments referred to herein (including without limitation the Loan Documents) constitute the entire agreement between the parties and supersede and rescind any prior agreement relating to the subject matter hereof.

13.5    Conflicts in Loan Documents. The terms and conditions of this Agreement are incorporated into each of the other Loan Documents. The terms of this Agreement and all of the Loan Documents shall be interpreted in such a manner as to be compatible and to not create any conflict. In the event of any conflict between or among the terms of this Agreement and any of the other Loan Documents, the terms of this Agreement shall control.

13.6    Binding Effect. All of the terms of this Agreement and the other Loan Documents, as the same may from time to time be amended, shall be binding upon, inure to the benefit of, and enforceable by, the respective successors and assigns of Borrower and Lender.

13.7    Captions. The captions to the various sections and subsections of this Agreement have been inserted for convenience only and shall not limit or affect any of the terms hereof.

13.8    Severability. If any clause, provision, or section of this Agreement be held illegal or invalid by any court for any reason, the remaining clauses, provisions, or sections shall be unimpaired and such illegal or invalid provisions shall be construed and applied so as to most closely, legitimately effectuate its intent.

13.9    Indirect Means. Any act which the Borrower is prohibited from doing shall not be done indirectly through a subsidiary or an affiliate or by any other indirect means.

13.10    No Third Party Beneficiaries. The terms, provisions, conditions and requirements made and set forth herein are for the benefit of the parties hereto and to better define the terms of the Loans, and in no event shall the Lender be construed to be Borrower's agent. It is specifically further intended that no party shall be a third party beneficiary hereunder or be entitled to protection of any of the covenants herein contained.

13.11    Liability of Lender. The Lender shall not be liable to Borrower for any act or omission by it pursuant to the provisions of the Loan Documents in the absence of fraud or gross negligence. In connection with the performance of its duties pursuant to the Loan Documents, Lender may consult with counsel of its own selection, and anything which the Lender may do or refrain from doing, in good faith, in reliance upon the opinion of such counsel, shall be full justification and protection to the Lender.

13.12    No Joint Venture. Neither this Agreement nor any agreements, instruments, documents or transactions contemplated hereby (including the Loan Documents), shall in any respect be interpreted, deemed or construed as making Lender a partner or joint venturer with Borrower or as creating any similar relationship or entity; it being intended by Lender and Borrower that their relationship shall be confined to that of "Lender" and "Borrower".

13.13    Joint and Several Liability. All persons, firms, and other entities identified by the designation "Borrower" herein shall be jointly and severally liable to Lender for the faithful performance of the terms of this Agreement.

13.14    Collateral Assignment. Borrower acknowledges that Lender intends and shall have the right to pledge its rights under this Agreement and the other Loan Documents as collateral to Citibank Bank, N.A., as agent for certain lenders under financing arrangements currently in force and effect ("Agent"), and/or any future lenders to Lender, and that pursuant to the terms of such pledge, Agent, or such future lenders, shall have authority to exercise Lender's rights and remedies under this Agreement and the other Loan Documents.

[remainder of page intentionally blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in their company names by their duly authorized representatives as of the date first above written.

CARE REALTY FUNDING, LLC

By: _____

Name: WARREN D. COLE

Its: AUTHORIZED SIGNATORY


ESSEX NORTH HEALTH SYSTEMS, LLC

By: _____

Name: JOHN G ALBERT

Its: MANAGER


[signature page to Loan and Security Agreement]

STATE OF New Jersey )
                     )
COUNTY OF Bergen )

I, Maria Vargas , a Notary Public of Bergen County, State of
New Jersey , do hereby certify that Warren Cole, authorized
signatory for Care Realty Funding, LLC, a Delaware limited liability company, personally appeared
before me this day and acknowledged the due execution of the foregoing instrument as his act and
deed and as the act and deed of the company.

Witness my hand and official seal, this the 12th day of November, 2002.

Notary Public **MARIA VARGAS**
**Notary Public**
**Bergen County NJ**
**ID #2287541**
**Commission Expires 5 / 9 / 20__**

My Commission Expires:

[OFFICIAL SEAL]


COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

I, Nathalie Hibble , a Notary Public of Suffolk County, Commonwealth of
Massachusetts, do hereby certify that John Albert , authorized signatory for Essex North
Health Systems, LLC, a Massachusetts limited liability company, personally appeared before me this
day and acknowledged the due execution of the foregoing instrument as his act and deed and as the
act and deed of the company.

Witness my hand and official seal, this the 7 day of November, 2002.

Notary Public

My Commission Expires: 10 / 4 / 2007

[OFFICIAL SEAL]

**EXHIBIT A**

Legal Description

EXECUTION COPY

### WORKING CAPITAL LOAN GUARANTY

This Guaranty, dated as of the 7th day of November, 2002 made by JOHN G. ALBERT, an individual residing at 23 Hawthorne Road, Windham, New Hampshire, and DIANNE M. BARRY, an individual residing at 736 Boston Post road, Weston, Massachusetts (individually a "Guarantor", and collectively, the "Guarantors") in favor of CARE REALTY FUNDING, LLC, a Delaware limited liability company having an address at c/o Care Realty, LLC, 411 Hackensack Avenue, 7th Floor, Hackensack, New Jersey 07601 ("Lender").

WHEREAS, 265 Essex Street, LLC, a Delaware limited liability company having an address at c/o Care Realty, LLC, 411 Hackensack Avenue, 7th Floor, Hackensack, New Jersey 07601 Attn: Warren D. Cole ("Landlord") has entered into the Beverly Nursing Home Lease dated as of August 23, 2002 and amended as of the date herewith (the "Lease"), with Essex North Health Systems, LLC, a Massachusetts limited liability company, having an address at c/o Landmark Health Solutions, LLC, 681 Main Street, Haverhill, Massachusetts 01830 Attn: John D. Albert ("Borrower") for the building known as 265 Essex Street, Beverly, Massachusetts 01915 (the "Premises"), which Lease is hereby incorporated in this Guaranty by reference; and

WHEREAS, simultaneously herewith, Lender has entered into the Working Capital Loan Agreement ("Loan Agreement"), dated as of the date hereof, with Borrower for the purpose of providing Borrower with a one-time Working Capital Loan in the aggregate principal amount of up to Five Hundred and Fifty Thousand and No/100 Dollars ($550,000.00), which Loan Agreement is hereby incorporated in this Guaranty by reference; and

WHEREAS, Guarantors as the Members/Principals of Borrower will derive substantial benefit from the Lease and Loan Agreement; and

WHEREAS, Guarantors acknowledge that Lender would not enter into the Loan Agreement unless Guarantors enter into this Guaranty and this Guaranty accompanies the execution and delivery of such Loan Agreement by Borrower.

NOW, THEREFORE, in consideration of the execution and delivery of the Loan Agreement by Lender, for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged by Guarantors, Guarantors do hereby covenant and agree with Lender as follows:

1.      Unless otherwise specifically noted, all capitalized terms used in this Guaranty shall have the same meaning as are ascribed to such terms in the Lease and Loan Agreement.

2.      Guarantors hereby jointly and severally, absolutely, unconditionally and irrevocably guaranty, as principal and not as indemnitor, to Lender, in accordance with and pursuant to this Guaranty, the full and timely performance of all obligations, now or hereafter existing, of Borrower under the Loan Agreement.

3. (A) Each Guarantor acknowledges that its liability hereunder is primary and that Lender may, at Lender's option, join any Guarantor in any action or proceeding commenced by Lender against Borrower in connection with or based upon the Lease or any term, covenant or condition thereof, and recovery may be had against any Guarantor in such action or proceeding or in any independent action or proceeding against any Guarantor without Lender first asserting, prosecuting, or exhausting any remedy or claim against Borrower.

(B) Each Guarantor acknowledges that this Guaranty is an absolute and unconditional guaranty of payment and performance and not merely of collection.

4. (A) All payments due hereunder shall be made in lawful money of the United States of America in immediately available funds free and clear of, and without deduction or withholding for or on account of, any taxes, levies, fees, imposts, duties, expenses, commissions, withholdings, assessments or other charges, or any penalties, fines, additions to tax or interest thereon (collectively, "Taxes") to the extent that any such Taxes would reduce the amount Lender would otherwise have received had Borrower made such payment. If any Taxes shall be required by law to be deducted or withheld from any payment hereunder and as a result thereof the amount Lender would otherwise have received had Borrower made such payment is reduced, Guarantors shall increase the amount paid so that Lender receives, after deduction or withholding on account of taxes, the full amount of the payment provided for in this Guaranty.

(B) If Lender shall be obligated by any bankruptcy, insolvency or other legal proceedings to repay to any Guarantor or to Borrower, or to any trustee, receiver or other representative of any of them, any amounts previously paid by any Guarantor pursuant to this Guaranty, this Guaranty shall be deemed reinstated to the extent of that repayment made by Lender. Lender shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, Lender believes that such obligation exists.

5. This Guaranty shall be a continuing guarantee and the liability of each Guarantor hereunder shall in no way be affected, modified, diminished, impaired or terminated by reason of any of the following, whether or not notice thereof is given to or consent is obtained from such Guarantor: (i) any subletting of all or any portion of the Premises or any assignment or other transfer of Borrower's interest in the Lease, (ii) any consent, approval, waiver or other action, inaction or omission under or concerning the Lease or the Loan Agreement, (iii) any modifications, renewals, extensions or amendments of the Lease or the Loan Agreement, (iv) any dealings or transactions or matter or thing occurring between Lender and Borrower, (v) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship affecting Borrower or its successors or assigns, (vi) the release or discharge of Borrower from the performance or observance of any of the terms, covenants or conditions contained in the Lease or the Loan Agreement pursuant to the terms thereof, by operation of law, by reason of any of the events described in Paragraph 5(v) hereof, or otherwise, (vii) any change in relationship between Guarantors and Borrower, (viii) the default or failure of any Guarantor to perform any of its obligations set forth in this Guaranty, (ix) any action which Lender may take or fail to take against Borrower by reason of any waiver of, or failure to enforce, any of the rights or remedies reserved to Lender in the Loan Agreement, or otherwise,

(x) any other circumstance or condition that may result in a discharge, limitation or reduction of liability of a surety or guarantor.

6.    (A)    Each Guarantor hereby waives notice of the acceptance of this Guaranty and presentment and demand for payment, notice of non-payment, notice of dishonor, protest, notice of protest, non-performance, non-observance and any other notice or demand to which such Guarantor might otherwise be entitled.

(B)    Each Guarantor hereby waives trial by jury of any and all issues arising in any action or proceeding between the parties, upon, under or in connection with this Guaranty or of any of its provisions, directly or indirectly, or any and all negotiations in connection therewith.

7.    Each Guarantor's obligations hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, attention or compromise and shall not be subject to, and each Guarantor hereby irrevocably waives, any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of any of Guarantor's obligations hereunder or otherwise.

8.    Each Guarantor hereby irrevocably:

(A)    submits to the jurisdiction of the state courts of the Commonwealth of Massachusetts and to the jurisdiction of the United States District Court for the District of Massachusetts, for the purposes of each and every suit, action or other proceeding arising out of or based upon this Guaranty or the subject matter hereof brought by Lender, it being expressly understood and agreed that this consent to jurisdiction shall be self-operative and no further instrument or action, other than service of process in one of the manners specified in this Guaranty or as otherwise permitted by such law, shall be necessary in order to confer jurisdiction upon such Guarantor in any such court; and

(B)    waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any suit, action or proceeding brought in any such court, any claim that such Guarantor is not subject personally to the jurisdiction of the above-named courts, that such Guarantor's property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Guaranty or the subject matter hereof may not be enforced in or by such court, and further agrees to waive, to the fullest extent permitted under applicable law, the benefit of any defense that would hinder, fetter or delay the levy, execution or collection of any amount to which Lender or its successors or assigns are entitled pursuant to the final judgment of any court having jurisdiction.

9.    Each Guarantor hereby consents to service of process by certified or registered mail to such Guarantor's address as set forth in Paragraph 14 hereof or in any other manner permitted by law. Each Guarantor agrees that service in the foregoing manner shall be deemed, in every respect, effective service of process upon such Guarantor and be taken and held to be valid personal service upon, and personal delivery to, such Guarantor. Each Guarantor agrees

that Guarantor's submission to jurisdiction and consent to service of process by mail is made for the express benefit of Lender.

    10.    Final judgment against any Guarantor in any such action, suit or proceeding shall be conclusive, and may be enforced in other jurisdictions:

    (A)    by suit, action or proceeding on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness or liability of such Guarantor therein described; or

    (B)    in any other manner provided by or pursuant to the laws of such other jurisdiction; provided, however, that Lender may at its option bring suit, or institute other judicial proceedings against any Guarantor or any of such Guarantor's assets in any state or federal court of the United States or of any country or place where any Guarantor or the assets of such Guarantor may be found.

    11.    Each Guarantor represents and warrants to Lender that:

    (A)    This Guaranty constitutes the legal, valid and binding obligation of such Guarantor, and is enforceable in accordance with its terms.

    (B)    Each Guarantor, as of the date hereof, is not in violation of any decree, ruling, judgment, order or injunction applicable to it nor any law, ordinance, rule or regulation of whatever nature, nor are there any actions, proceedings or investigations pending or threatened against or affecting such Guarantor (or any basis therefor known to such Guarantor) before or by any court, arbitrator, administrative agency or other governmental authority or entity, any of which, if adversely decided, would materially or adversely affect its ability to carry out any of the terms, covenants and conditions of this Guaranty.

    (C)    No authorization, approval, consent or permission (governmental or otherwise) of any court, agency, commission or other authority or entity is required for the due execution, delivery, performance or observance by such Guarantor of this Guaranty or for the payment of any sums hereunder.

    (D)    Neither the execution and delivery of this Guaranty, nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof, conflict or will conflict with or result in a breach of any of the terms, conditions or provisions of any order, writ, injunction or decree of any court or governmental authority, or of any agreement or instrument to which such Guarantor is a party or by which it is bound, or constitutes or will constitute a default thereunder.

    (E)    Such Guarantor represents and warrants that it is not entitled to immunity from judicial proceedings and agrees that, in the event Lender brings any suit, action or proceeding in Massachusetts or any other jurisdiction to enforce any obligation or liability of such Guarantor arising, directly or indirectly, out of or relating to this Guaranty, no immunity from such suit, action or proceedings will be claimed by or on behalf of such Guarantor.

12.    Nothing herein contained is intended or shall be construed to give to any Guarantor any right of subrogation under the Lease or any right to participate in any way therein or in Landlord's right, title and interest in the Lease. Notwithstanding any payments made under this Guaranty, all rights of subrogation and participation are expressly waived and released by each Guarantor.

13.    If Lender shall employ counsel to enforce any Guarantors' obligations under this Guaranty or any part thereof, Guarantors agree to pay on demand all of Lender's costs in connection therewith, whether or not suit be brought including, without limitation, attorneys' fees and disbursements.

14.    All notices, demands, requests, consents, approvals or other communications (collectively, "Notices") desired or required to be given under this Guaranty shall be in writing, and, any law or statute to the contrary notwithstanding, shall be effective for any purpose if sent by registered or certified mail, return receipt requested, prepaid, addressed as follows:

If to Guarantors, to them at:

John G. Albert
23 Hawthorne Road
Windham NH 03087

Dianne M. Barry
736 Boston Post Road
Weston, MA 02493

with a copy to:

Donoghue Barrett & Singal, P.C.
1 Beacon Street, Suite 1320
Boston, MA 01208
Attn: Nina G. Edwards, Esq.

If to Lender, to it at:

265 Essex Street, LLC
c/o Care Realty, LLC
411 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
Attn: Warren Cole

with a copy to:

Proskauer Rose LLP
1233 20th Street N.W., Suite 800
Washington, DC 20036
Attention: Joseph E. Casson, Esq.

All Notices shall be deemed given or served on the third (3rd) day after the date on which such Notice has been sent. Any party to this Guaranty may change the address to which Notices shall be delivered to it and its representatives by notice in accordance with this Paragraph 14.

15.    (A)    The provisions of this Guaranty shall be binding upon and shall inure to the benefit of Lender and Guarantors and their respective successors and assigns. All references in this Guaranty to Lender and Borrower shall be deemed to mean Lender's and Borrower's respective permitted successors and assigns.

(B)    No delay on the part of Lender in exercising any right, power or privilege under this Guaranty, nor any failure to exercise the same, shall operate as a waiver of, or otherwise affect, any right, power or privilege of Lender under this Guaranty, nor shall any single or partial exercise thereof preclude the further exercise of, or the exercise of any other, right, power or privilege of Lender under this Guaranty.

(C)    Neither any waiver or modification of any provision of this Guaranty, nor any termination of this Guaranty, shall be effective unless in writing and signed by the party against which the waiver, modification or termination is sought to be enforced, nor shall any waiver be applicable except in the specific instance for which it is given.

(D)    The validity and enforcement of this Guaranty shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without regard to principles of conflicts of law, and such laws shall apply in any action or proceeding arising out of or under this Guaranty.

(E)    All remedies afforded to Lender by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one remedy, whether exercised by Lender or not, shall be deemed to be in exclusion of any other remedy available to

If to Lender, to it at:

265 Essex Street, LLC
c/o Care Realty, LLC
411 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
Attn: Warren Cole

with a copy to:

Proskauer Rose LLP
1233 20th Street N.W., Suite 800
Washington, DC 20036
Attention: Joseph E. Casson, Esq.

All Notices shall be deemed given or served on the third (3rd) day after the date on which such Notice has been sent. Any party to this Guaranty may change the address to which Notices shall be delivered to it and its representatives by notice in accordance with this Paragraph 14.

15.    (A)    The provisions of this Guaranty shall be binding upon and shall inure to the benefit of Lender and Guarantors and their respective successors and assigns. All references in this Guaranty to Lender and Borrower shall be deemed to mean Lender's and Borrower's respective permitted successors and assigns.

(B)    No delay on the part of Lender in exercising any right, power or privilege under this Guaranty, nor any failure to exercise the same, shall operate as a waiver of, or otherwise affect, any right, power or privilege of Lender under this Guaranty, nor shall any single or partial exercise thereof preclude the further exercise of, or the exercise of any other, right, power or privilege of Lender under this Guaranty.

(C)    Neither any waiver or modification of any provision of this Guaranty, nor any termination of this Guaranty, shall be effective unless in writing and signed by the party against which the waiver, modification or termination is sought to be enforced, nor shall any waiver be applicable except in the specific instance for which it is given.

(D)    The validity and enforcement of this Guaranty shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without regard to principles of conflicts of law, and such laws shall apply in any action or proceeding arising out of or under this Guaranty.

(E)    All remedies afforded to Lender by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one remedy, whether exercised by Lender or not, shall be deemed to be in exclusion of any other remedy available to

Lender and shall not limit or prejudice any other legal or equitable remedy which Lender may have.

(F)    If any provision of this Guaranty or the application thereof to any person or circumstance shall to any extent be held void, unenforceable or invalid, then the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held void, unenforceable or invalid, shall not be affected thereby and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, Guarantors have duly signed this Guaranty as of the date first above written.

_John G. Albert, Guarantor_

_Dianne M. Barry, Guarantor_

## GUARANTY

This Guaranty, dated as of the 22nd day of August, 2002 made by JOHN G. ALBERT, an individual residing at 23 Hawthorne Road, Windham, New Hampshire, and DIANNE BARRY, an individual residing at 736 Boston Post road, Weston, Massachusetts (individually a "Guarantor", and collectively, the "Guarantors") in favor of 265 ESSEX STREET, LLC, a Delaware limited liability company having an address at c/o Care Realty, LLC, 411 Hackensack Avenue, 7th Floor, Hackensack, New Jersey 07601 ("Landlord").

WHEREAS, simultaneously herewith, Landlord has entered into the Beverly Nursing Home Lease (the "Lease"), dated as of the date hereof, with Essex North Health Systems, LLC, a Massachusetts limited liability company, having an address at c/o Landmark Health Solutions, LLC, 681 Main Street, Haverhill, Massachusetts 01830 Attn: John D. Albert ("Tenant") for the building known as 265 Essex Street, Beverly, Massachusetts 01915 (the "Premises"), which Lease is hereby incorporated in this Guaranty by reference; and

WHEREAS, Guarantors as the Members/Principals of Tenant will derive substantial benefit from the Lease; and

WHEREAS, Guarantors acknowledge that Landlord would not enter into the Lease unless Guarantors enter into this Guaranty and this Guaranty accompanies the execution and delivery of such Lease by Tenant.

NOW, THEREFORE, in consideration of the execution and delivery of the Lease by Landlord, for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged by Guarantors, Guarantors do hereby covenant and agree with Landlord as follows:

1.    Unless otherwise specifically noted, all capitalized terms used in this Guaranty shall have the same meaning as are ascribed to such terms in the Lease.

2.    Guarantors hereby jointly and severally, absolutely, unconditionally and irrevocably guaranty, as principal and not as indemnitor, to Landlord, in accordance with and pursuant to this Guaranty, the full and timely performance of all obligations, now or hereafter existing, of Tenant under the Lease. Notwithstanding the foregoing, Guarantors liability during the Initial Term or the Extension Term, as applicable, shall not exceed the sum of (i) three (3) times the then current monthly Base Rent or monthly Adjusted Base Rent, as applicable, and (ii) the four hundred thousand dollar ($400,000.00) Working Capital Shortfall requirement under the Lease. From year to year during the initial term any extension Term under the Lease, upon an increase in the Rent payable under the Lease, the amount of the guaranty shall increase to an amount equal to three (3) months' Rent at the Rent amounts in effect for that year.

3.    (A)    Each Guarantor acknowledges that its liability hereunder is primary and that Landlord may, at Landlord's option, join any Guarantor in any action or proceeding commenced by Landlord against Tenant in connection with or based upon the Lease or any term, covenant or

condition thereof, and recovery may be had against any Guarantor in such action or proceeding or in any independent action or proceeding against any Guarantor without Landlord first asserting, prosecuting, or exhausting any remedy or claim against Tenant.

(B)     Each Guarantor acknowledges that this Guaranty is an absolute and unconditional guaranty of payment and performance and not merely of collection.

4.     (A)     All payments due hereunder shall be made in lawful money of the United States of America in immediately available funds free and clear of, and without deduction or withholding for or on account of, any taxes, levies, fees, imposts, duties, expenses, commissions, withholdings, assessments or other charges, or any penalties, fines, additions to tax or interest thereon (collectively, "Taxes") to the extent that any such Taxes would reduce the amount Landlord would otherwise have received had Tenant made such payment. If any Taxes shall be required by law to be deducted or withheld from any payment hereunder and as a result thereof the amount Landlord would otherwise have received had Tenant made such payment is reduced, Guarantors shall increase the amount paid so that Landlord receives, after deduction or withholding on account of taxes, the full amount of the payment provided for in this Guaranty.

(B)     If Landlord shall be obligated by any bankruptcy, insolvency or other legal proceedings to repay to any Guarantor or to Tenant, or to any trustee, receiver or other representative of any of them, any amounts previously paid by any Guarantor pursuant to this Guaranty, this Guaranty shall be deemed reinstated to the extent of that repayment made by Landlord. Landlord shall not be required to litigate or otherwise dispute its obligation to make such repayments if, in good faith and on the advice of counsel, Landlord believes that such obligation exists.

5.     (A)     This Guaranty shall be a continuing guarantee and the liability of each Guarantor hereunder shall in no way be affected, modified, diminished, impaired or terminated by reason of any of the following, whether or not notice thereof is given to or consent is obtained from such Guarantor: (i) any subletting of all or any portion of the Premises or any assignment or other transfer of Tenant's interest in the Lease, (ii) any consent, approval, waiver or other action, inaction or omission under or concerning the Lease, (iii) any modifications, renewals, extensions or amendments of the Lease, (iv) any dealings or transactions or matter or thing occurring between Landlord and Tenant, (v) any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership or trusteeship affecting Tenant or its successors or assigns, (vi) the release or discharge of Tenant from the performance or observance of any of the terms, covenants or conditions contained in the Lease pursuant to the terms thereof, by operation of law, by reason of any of the events described in Paragraph 5(v) hereof, or otherwise, (vii) any change in relationship between Guarantors and Tenant, (viii) the default or failure of any Guarantor to perform any of its obligations set forth in this Guaranty, (ix) any action which Landlord may take or fail to take against Tenant by reason of any waiver of, or failure to enforce, any of the rights or remedies reserved to Landlord in the Lease, or otherwise, (x) any failure or refusal of Landlord to re-let the Premises or any part or parts thereof in the event that Landlord shall obtain possession of the Premises after Tenant's insolvency or default, (xi) any failure to collect rent thereof under any such re-letting, (xii) any alterations, repairs, replacements and/or decorations in the Premises as Landlord, in Landlord's sole judgment, considers advisable and necessary for the purpose of re-letting the

Premises, and (xiii) any other circumstance or condition that may result in a discharge, limitation or reduction of liability of a surety or guarantor.

(B)     Any suit or proceedings brought against any Guarantor to collect any amounts referred to in Article 17 of the Lease for any month or months shall not prejudice in any way the rights of Landlord to collect any such deficiency for any subsequent month or months in any similar suit or proceeding.

6.     (A)     Each Guarantor hereby waives notice of the acceptance of this Guaranty and presentment and demand for payment, notice of non-payment, notice of dishonor, protest, notice of protest, non-performance, non-observance and any other notice or demand to which such Guarantor might otherwise be entitled.

(B)     Each Guarantor hereby waives trial by jury of any and all issues arising in any action or proceeding between the parties, upon, under or in connection with this Guaranty or of any of its provisions, directly or indirectly, or any and all negotiations in connection therewith.

7.     Each Guarantor's obligations hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including, without limitation, any claim of waiver, release, surrender, attention or compromise and shall not be subject to, and each Guarantor hereby irrevocably waives, any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of any of Guarantor's obligations hereunder or otherwise.

8.     Each Guarantor hereby irrevocably:

(A)     submits to the jurisdiction of the state courts of the Commonwealth of Massachusetts and to the jurisdiction of the United States District Court for the District of Massachusetts, for the purposes of each and every suit, action or other proceeding arising out of or based upon this Guaranty or the subject matter hereof brought by Landlord, it being expressly understood and agreed that this consent to jurisdiction shall be self-operative and no further instrument or action, other than service of process in one of the manners specified in this Guaranty or as otherwise permitted by such law, shall be necessary in order to confer jurisdiction upon such Guarantor in any such court; and

(B)     waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any suit, action or proceeding brought in any such court, any claim that such Guarantor is not subject personally to the jurisdiction of the above-named courts, that such Guarantor's property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Guaranty or the subject matter hereof may not be enforced in or by such court, and further agrees to waive, to the fullest extent permitted under applicable law, the benefit of any defense that would hinder, fetter or delay the levy, execution or collection of any amount to which Landlord or its successors or assigns are entitled pursuant to the final judgment of any court having jurisdiction.

9.     Each Guarantor hereby consents to service of process by certified or registered mail to such Guarantor's address as set forth in Paragraph 14 hereof or in any other manner permitted by law. Each Guarantor agrees that service in the foregoing manner shall be deemed, in every respect, effective service of process upon such Guarantor and be taken and held to be valid personal service upon, and personal delivery to, such Guarantor. Each Guarantor agrees that Guarantor's submission to jurisdiction and consent to service of process by mail is made for the express benefit of Landlord.

10.     Final judgment against any Guarantor in any such action, suit or proceeding shall be conclusive, and may be enforced in other jurisdictions:

(A)     by suit, action or proceeding on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and of the amount of any indebtedness or liability of such Guarantor therein described; or

(B)     in any other manner provided by or pursuant to the laws of such other jurisdiction; provided, however, that Landlord may at its option bring suit, or institute other judicial proceedings against any Guarantor or any of such Guarantor's assets in any state or federal court of the United States or of any country or place where any Guarantor or the assets of such Guarantor may be found.

11.     Each Guarantor represents and warrants to Landlord that:

(A)     This Guaranty constitutes the legal, valid and binding obligation of such Guarantor, and is enforceable in accordance with its terms.

(B)     Each Guarantor, as of the date hereof, is not in violation of any decree, ruling, judgment, order or injunction applicable to it nor any law, ordinance, rule or regulation of whatever nature, nor are there any actions, proceedings or investigations pending or threatened against or affecting such Guarantor (or any basis therefor known to such Guarantor) before or by any court, arbitrator, administrative agency or other governmental authority or entity, any of which, if adversely decided, would materially or adversely affect its ability to carry out any of the terms, covenants and conditions of this Guaranty.

(C)     No authorization, approval, consent or permission (governmental or otherwise) of any court, agency, commission or other authority or entity is required for the due execution, delivery, performance or observance by such Guarantor of this Guaranty or for the payment of any sums hereunder.

(D)     Neither the execution and delivery of this Guaranty, nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof, conflict or will conflict with or result in a breach of any of the terms, conditions or provisions of any order, writ, injunction or decree of any court or governmental authority, or of any agreement or instrument to which such Guarantor is a party or by which it is bound, or constitutes or will constitute a default thereunder.

(E)    Such Guarantor represents and warrants that it is not entitled to immunity from judicial proceedings and agrees that, in the event Landlord brings any suit, action or proceeding in Massachusetts or any other jurisdiction to enforce any obligation or liability of such Guarantor arising, directly or indirectly, out of or relating to this Guaranty, no immunity from such suit, action or proceedings will be claimed by or on behalf of such Guarantor.

12.    Nothing herein contained is intended or shall be construed to give to any Guarantor any right of subrogation under the Lease or any right to participate in any way therein or in Landlord's right, title and interest in the Lease. Notwithstanding any payments made under this Guaranty, all rights of subrogation and participation are expressly waived and released by each Guarantor.

13.    If Landlord shall employ counsel to enforce any Guarantors' obligations under this Guaranty or any part thereof, Guarantors agree to pay on demand all of Landlord's costs in connection therewith, whether or not suit be brought including, without limitation, attorneys' fees and disbursements.

14.    All notices, demands, requests, consents, approvals or other communications (collectively, "Notices") desired or required to be given under this Guaranty shall be in writing, and, any law or statute to the contrary notwithstanding, shall be effective for any purpose if sent by registered or certified mail, return receipt requested, prepaid, addressed as follows:

If to Guarantors, to them at:

John G. Albert
23 Hawthorne Road
Windham NH 03087

Dianne Barry
736 Boston Post Road
Weston, MA 02493

with a copy to:

Donoghue Barrett & Singal, P.C.
1 Beacon Street, Suite 1320
Boston, MA 01208
Attn: Nina G. Edwards, Esq.

If to Landlord, to it at:

265 Essex Street, LLC
c/o Care Realty, LLC
411 Hackensack Avenue, 7th Floor
Hackensack, NJ 07601
Attn: Warren Cole

with a copy to:

Proskauer Rose LLP
1233 20th Street N.W., Suite 800
Washington, DC 20036
Attention: Joseph E. Casson, Esq.

All Notices shall be deemed given or served on the third (3rd) day after the date on which such Notice has been sent. Any party to this Guaranty may change the address to which Notices shall be delivered to it and its representatives by notice in accordance with this Paragraph 14.

15.    (A)    The provisions of this Guaranty shall be binding upon and shall inure to the benefit of Landlord and Guarantors and their respective successors and assigns. All references in this Guaranty to Landlord and Tenant shall be deemed to mean Landlord's and Tenant's respective permitted successors and assigns.

(B)    No delay on the part of Landlord in exercising any right, power or privilege under this Guaranty, nor any failure to exercise the same, shall operate as a waiver of, or otherwise affect, any right, power or privilege of Landlord under this Guaranty, nor shall any single or partial exercise thereof preclude the further exercise of, or the exercise of any other, right, power or privilege of Landlord under this Guaranty.

(C)    Neither any waiver or modification of any provision of this Guaranty, nor any termination of this Guaranty, shall be effective unless in writing and signed by the party against which the waiver, modification or termination is sought to be enforced, nor shall any waiver be applicable except in the specific instance for which it is given.

(D)    The validity and enforcement of this Guaranty shall be governed by and construed in accordance with the internal laws of the Commonwealth of Massachusetts without regard to principles of conflicts of law, and such laws shall apply in any action or proceeding arising out of or under this Guaranty.

(E)    All remedies afforded to Landlord by reason of this Guaranty are separate and cumulative remedies and it is agreed that no one remedy, whether exercised by Landlord or not, shall be deemed to be in exclusion of any other remedy available to Landlord and shall not limit or prejudice any other legal or equitable remedy which Landlord may have.

(F)    If any provision of this Guaranty or the application thereof to any person or circumstance shall to any extent be held void, unenforceable or invalid, then the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held void, unenforceable or invalid, shall not be affected thereby and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, Guarantors have duly signed this Guaranty as of the date first above written.

John G. Albert, Guarantor

Dianne Barry, Guarantor

8/23/02 10:06:53 AM (18335)

CARE REALTY FUNDING, LLC
c/o Care Realty, L.L.C.
411 Hackensack Avenue
7th Floor
Hackensack, NJ 07601

VIA OVERNIGHT DELIVERY

September 9, 2004

Essex North Health Systems, LLC          Essex North Health Systems, LLC
c/o Landmark Health Solutions, LLC        c/o Landmark Health Solutions, LLC
57 Wingate Street                         681 Main Street
Haverhill, MA 01830                       Haverhill, MA 01830
Attn: John G. Albert                      Attn: John G. Albert

Re:    Montserrat Nursing and Rehabilitation of Beverly, 265 Essex Street, Beverly, MA

Gentlemen:

Reference is hereby made to that certain (i) Loan and Security Agreement between Care Realty
Funding, LLC (the "Lender") and Essex North Health Systems, LLC (the "Borrower") dated as
of November 7, 2002 (the "Working Capital Loan Agreement"); (ii) Promissory Note in the
original principal amount of $550,000 executed by Borrower and made payable to Lender dated
as of November 7, 2002 (the "Promissory Note"); (iii) Beverly Nursing Home Lease between
265 Essex Street, LLC, as landlord and Borrower, as tenant dated as of August 23, 2002, as
amended by First Amendment to the Beverly Nursing Home Lease between 265 Essex Street,
LLC, as landlord and Borrower, as tenant dated as of November 7, 2002 (collectively, the
"Lease"); and (iv) Working Capital Loan Guaranty from John G. Albert and Dianne M. Barry
dated November 7, 2002 (the "Guaranty"). All capitalized terms used herein, unless otherwise
defined, shall have the meanings ascribed to them in the Working Capital Loan Agreement.

Lender hereby notifies Borrower that an Event of Default has occurred under the Working
Capital Loan Agreement and Promissory Note by reason of the failure of Borrower to make
payment of principal, interest, fees, expenses or amounts due to Lender under the Working
Capital Loan Agreement and Promissory Note as and when the same became due and payable,
and the expiration of all applicable grace periods and as further described in Exhibit A attached
hereto and made a part hereof (the "Default Amount").

Lender also hereby notifies Borrower that pursuant to Section 10.3 of the Working Capital Loan
Agreement, Lender is electing to impose additional post-default interest at the highest interest
rate permitted by law until the Default Amount is cured to the Lender's satisfaction.

Essex North Health Systems, LLC
September 9, 2004
Page 2 of 2

Lender also hereby notifies Borrower that an Event of Default has occurred under the Working Capital Loan Agreement and Promissory Note by reason of a default by Borrower under the Lease.

Although Lender has no duty or obligation under the Working Capital Loan Agreement or Promissory Note to provide Borrower with notice and an opportunity to cure, in the event that Borrower does not pay the Default Amount to Lender and cure the default under the Lease within thirty (30) calendar days after the date hereof, Lender may, at its option, exercise any and all additional rights and remedies available to Lender under the Working Capital Loan Agreement, the Promissory Note, at law or in equity by reason of Borrower's aforesaid defaults. The foregoing shall in no way be deemed a waiver of Lender's rights under the Working Capital Loan Agreement, the Promissory Note, the Lease or the Guaranty.

Sincerely,

CARE REALTY FUNDING, LLC

by: _____
Warren D. Cole, authorized signatory

CC:  Donoghue Barrett & Singal, P.C.          Proskauer Rose LLP
     1 Beacon Street, Suite 1320              1233 20th Street N.W.
     Boston, MA 01208                         Suite 800
     Attn:  Nina G. Edwards, Esq.             Washington DC 20036
                                              Attn:  Joseph E. Casson, Esq.

     265 Essex Street, LLC
     c/o Care Realty, L.L.C.
     411 Hackensack Avenue
     7th Floor
     Hackensack, NJ 07601

**EXHIBIT A**



# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2005-00192**

Care Realty Funding LLC, 265 Essex Street LLC, Plaintiff(s)
vs.
John G Albert

, Defendant(s)

### SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Melvin S Hoffman, Esquire**, plaintiff's attorney, whose address is **Looney & Grossman 101 Arch StreetBoston, MA 02110** , an answer to the complaint/cross claim/counterclaim which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint/ cross claim/counterclaim. You are also required to file your answer to the complaint/ cross claim/counterclaim in the office of the Clerk of this Court at Newburyport either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Essex County Superior Court, in Newburyport on **02/08/2005, at 02:00 PM in CtRm 1 (Newburyport),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Newburyport, Massachusetts this 2nd day of February, 2005.

....................................................................
Clerk

### (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2005-00192-B**

RE:   **Care Realty Funding LLC et al v Albert**

TO:Charles P Kindregan, Esquire
Looney & Grossman
101 Arch Street
Boston, MA 02110

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 05/03/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/02/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/02/2005 |
| All motions under MRCP 15 filed | 07/02/2005 |
| All discovery requests and depositions completed | 11/29/2005 |
| All motions under MRCP 56 served and heard | 12/29/2005 |
| Final pre-trial conference held and firm trial date set | 01/28/2006 |
| Case disposed | 03/29/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**.  You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session B sitting in **CtRm 1 (Newburyport) at Essex Superior Court.**

Dated: 02/02/2005

Thomas H. Driscoll Jr.
Clerk of the Courts

BY: JoDee Doyle - Sheila Gaudette
Assistant Clerk

Location: CtRm 1 (Newburyport)
Telephone: (978) 462-4474

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 524244 inidoc01 cavanaug

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET# **ESCV2005-00192-B**

RE:  **Care Realty Funding LLC et al v Albert**

TO: Melvin S Hoffman, Esquire
Looney & Grossman
101 Arch Street
Boston, MA 02110

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 05/03/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/02/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/02/2005 |
| All motions under MRCP 15 filed | 07/02/2005 |
| All discovery requests and depositions completed | 11/29/2005 |
| All motions under MRCP 56 served and heard | 12/29/2005 |
| Final pre-trial conference held and firm trial date set | 01/28/2006 |
| Case disposed | 03/29/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session B sitting in **CtRm 1 (Newburyport) at Essex Superior Court.**

Dated: 02/02/2005

Thomas H. Driscoll Jr.
Clerk of the Courts

BY: JoDee Doyle - Sheila Gaudette
Assistant Clerk

Location: CtRm 1 (Newburyport)
Telephone: (978) 462-4474

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtract_2.wpd 524244 inidoc01 cavanaug

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 5 6192 | Trial Court of Massachusetts Superior Court Department County: ESSEX |
|---|---|---|

**PLAINTIFF(S)**
CARE REALTY FUNDING, LLC and STREET, LLC

**DEFENDANT(S)**
JOHN G. ALBERT

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Mark M. Mulligan, BBO #559431
Looney & Grossman LLP, 101 Arch St.,
Boston, MA 02110, Tel:  (617) 951-2800
Board of Bar Overseers number:

**ATTORNEY** (if known)

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial)  (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A03 | Commercial Paper | ( F ) | ( ) Yes   ( X ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses
  2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
  3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
  4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
  5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
                                                                   Subtotal $ . . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . $
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . $
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . $
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
F. Other documented items of damages (describe)
                                                                                   $
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
                                                                                   $

                                                                   TOTAL $ . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): In this action, Plaintiffs seek to recover sums due them from John G. Albert as guarantor of a Promissory Note and Lease executed between Plaintiffs and Essex North Health Systems.  Essex North Health Systems has defaulted under Promissory Note and Lease.  Albert, as guarantor is liable for the amounts owed Plaintiffs.

                                                                   **TOTAL $.** 1,183,027

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record   _Mark M M_                         DATE: 2-2-05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT

**B** 5 C182

Leave i. 2/2/05
Order of Notice to Issue
Returnable 2/8/05 at 2:00
Attest: J.3——— P. M
Asst. Clerk

|  |  |
|---|---|
| CARE REALTY FUNDING, LLC AND 265 ESSEX STREET, LLC | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOHN G. ALBERT | ) ) |
| Defendant | ) ) ) |

## PLAINTIFFS' MOTION FOR ISSUANCE OF A SHORT ORDER NOTICE

Plaintiffs Care Realty Funding, LLC ("Funding") and 265 Essex Street, LLC (the "Landlord) request that this Court issue a Short Order Notice, shortening the time for the Defendant John G. Albert ("Albert") to respond to Plaintiffs' Motion For Preliminary Injunction. Plaintiffs ask that this Court schedule a return date and a hearing on their motion at the earliest possible time.

In support of their motion, Plaintiffs state that:

1.     Funding holds a promissory note (the "Note") made by Essex North Health System, LLC ("Essex") and in favor of Funding. Albert and Diane M. Barry ("Barry") executed a Working Capital Loan Guaranty ("Loan Guaranty") under which Albert and Barry jointly and severally, absolutely, unconditionally and irrevocably guaranteed, as principal, the full and timely performance of all Essex's obligations under the Note.[1] Essex has defaulted on its obligations under the Note. Funding notified Essex and Albert that an Event of Default had occurred under the Note and Loan and Security

---

[1] Plaintiffs understand that Barry is deceased.

Agreement (the "Agreement") by reason of Essex's failure to make payment of principal, interest, fees, expenses or amounts due Essex under the Agreement and the Note when the same became due and payable. Essex has failed to respond to Funding's Notice and the demand for payment under the Note. As guarantor, Albert is liable to funding for all amounts owed by Essex.

2.     Essex entered into a lease with the Landlord for the building known as 265 Essex Street, Beverly, Massachusetts. Subsequent to the execution of the initial lease, Essex and the Landlord entered into a First Amendment to the lease (collectively, the "Beverly Nursing Home Lease"). Albert and Barry executed a Guaranty (the "Lease Guaranty") pursuant to which Albert and Barry jointly and severally, each absolutely, unconditionally and irrevocably guaranteed as principals the full and timely performance of all of Essex's obligations under the Beverly Nursing Home Lease up to a maximum of three times the current monthly Base Rent as defined in the Beverly Nursing Home Lease and the $400,000 Working Capital Shortfall as defined in the Beverly Nursing Home Lease. Essex is in default of its obligations to the Landlord under the Beverly Nursing Home Lease. Among other things, Essex has failed to make payments due on numerous dates. As guarantor, Albert is liable to Funding for all amounts owed by Essex.

3.     Because the liability of Albert to Plaintiffs is clear, Plaintiffs' likelihood of success on the merits is virtually assured.

4.     Upon information and belief, Albert will not have the financial capability to satisfy a judgment by the time judgment enters in this case in the favor of Plaintiffs.

5.     Upon information and belief, on November 1, 2002, just prior to executing the Loan Guaranty, Albert caused the ownership of his home at 23 Hawthorne Road,

Windham, New Hampshire to be transferred, from John G. Albert and Cheryl A. Albert as joint tenants to Cheryl A. Albert, individually.

6.    In the absence of a Short Order Notice, there is a substantial likelihood that Plaintiffs' legal remedies will be rendered meaningless and Plaintiffs will have little or no chance of collection from Albert.

WHEREFORE, Plaintiffs request that this Court issue a Short Order Notice, scheduling a return date and a hearing on their Motion For Preliminary Injunction at the earliest possible date.

Respectfully submitted,

CARE REALTY FUNDING, LLC, AND
265 ESSEX STREET, LLC

By their attorneys,

Melvin Hoffman (BBO#237120)
Charles P. Kindregan (BBO#554947)
Mark M. Mulligan (BBO#559431)
Looney & Grossman LLP
101 Arch Street
Boston, MA  02110
(617) 951-2800

Dated: February 2, 2005

3

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
C.A. No.

```
                                    )
CARE REALTY FUNDING, LLC AND        )
265 ESSEX STREET, LLC               )
                                    )
         Plaintiffs,                )
                                    )
v.                                  )
                                    )
JOHN G. ALBERT                      )
                                    )
         Defendant.                 )
                                    )
```

## MOTION FOR SPECIAL PROCESS SERVER

The plaintiffs, Care Realty Funding, LLC and 265 Essex Street, LLC, move

pursuant to Mass. R. Civ. P. 4(c) that this Court appoint as special process server Suvalle

& Jodrey, One Devonshire Place, Boston, MA 02109 (Tel: 617-720-5733; Fax: 617-720-

5737), who are qualified individuals over the age of 18, knowledgeable in the service of

process, and are not parties to this action.

Respectfully submitted,

CARE REALTY FUNDING, LLC, AND
265 ESSEX STREET, LLC
By their attorneys,

Melvin Hoffman (BBO#237120)
Charles P. Kindregan (BBO#554947)
Mark M. Mulligan (BBO#559431)
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800

Dated: February 2, 2005

4

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
C.A. No.

6482

|  |  |
|---|---|
| CARE REALTY FUNDING, LLC AND 265 ESSEX STREET, LLC | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| JOHN G. ALBERT | ) ) |
| Defendant | ) ) ) |

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Mass.R.Civ.P. 65, the Plaintiffs, Care Realty Funding, LLC ("Funding") and 265 Essex Street, LLC (the "Landlord") request that this Court issue a Preliminary Injunction against the Defendant, John G. Albert ("Albert"), to prevent him from dissipating assets. Plaintiffs are virtually assured of succeeding on the merits of their claims, and are entitled to the relief sought in the Verified Complaint. Albert will not have the financial capability to satisfy a judgment entered in Plaintiffs' favor. Absent injunctive relief, there is a substantial likelihood that Funding's legal remedies will be rendered meaningless and Plaintiffs will have little or no chance of collection from Albert. As grounds for this motion, Plaintiffs state:

1.    Funding holds a promissory note (the "Note") made by Essex North Health System, LLC ("Essex") and in favor of Funding. Albert and Diane M. Barry ("Barry") executed a Working Capital Loan Guaranty ("Loan Guaranty") under which Albert and Barry jointly and severally, absolutely, unconditionally and irrevocably guaranteed, as principals, the full and timely performance of all Essex's obligations under

the Note.[1] Essex has defaulted on its obligations under the Note. Funding notified Essex and Albert that an Event of Default had occurred under the Note and Loan and Security Agreement (the "Agreement") by reason of Essex's failure to make payment of principal, interest, fees, expenses or amounts due Funding under the Agreement and the Note when the same became due and payable and provided Essex thirty (30) days to cure the default. Essex has failed to respond to Funding's Notice and the demand for payment under the Note. As principal of Essex and guarantor pursuant to the Loan Guaranty, Albert is clearly aware of Essex's default under the Note and his obligations as guarantor to fully and timely perform all obligations of Essex under the Note. As guarantor, Albert is indebted to Funding, and is liable to Funding, for all amounts for which Essex is liable to Funding. Albert is currently liable to Funding in the amount of $519,027.00 under the Note and Loan Guaranty.

2.    Essex entered into a lease with the Landlord for the building known as 265 Essex Street, Beverly, Massachusetts. Subsequent to the execution of the initial lease, Essex and the Landlord entered into a First Amendment to the lease (collectively, the "Beverly Nursing Home Lease"). Albert and Barry executed a Guaranty (the "Lease Guaranty") pursuant to which Albert and Barry jointly and severally, each absolutely, unconditionally and irrevocably guaranteed, as principals, the full and timely performance of all of Essex's obligations under the Beverly Nursing Home Lease up to a maximum of three times the current monthly Base Rent as defined in the Beverly Nursing Home Lease and the $400,000 Working Capital Shortfall as defined in the Beverly Nursing Home Lease. Essex is in default of its obligations to the Landlord under the Beverly Nursing Home Lease. Among other things, Essex has failed to make payments

---

[1] Plaintiffs understand that Barry is deceased.

due on numerous dates. The Landlord notified Essex and Albert that a Lease Default had occurred under the Beverly Nursing Home Lease by reason of Essex's failure to pay rent and provided Essex thirty (30) days to cure the default. Essex has failed to respond to the Landlord's notice and the demand for payment under the Beverly Nursing Home Lease. As principal of Essex and guarantor pursuant to the Lease Guaranty, Albert is clearly aware of Essex's default under the Beverly Nursing Home Lease and his obligations as guarantor to fully and timely perform all obligations of Essex under the Beverly Nursing Home Lease. As guarantor, Albert is liable to funding for all amounts owed by Essex. Albert is currently liable to the Landlord in the amount of $644,000.00 under the Lease Guaranty.

3.     There is a likelihood of success on the merits on Funding's and the Landlord's claims against Albert. Absent a preliminary injunction, Plaintiffs will not be able to satisfy the judgment Plaintiffs will obtain, and Plaintiffs' legal remedies will be rendered meaningless with no chance of collection from Albert. Thus, absent injunctive relief, Plaintiffs will suffer irreparable harm.

4.     In this instance, Funding and the Landlord are suing on absolute, unconditional and irrevocable guaranties, under which Albert, as principal, agreed to guarantee the full and timely performance of all of Essex's obligations under Note and the Beverly Nursing Home Lease There is no real dispute about the likelihood of Funding's and the Landlord's success on the merits. Indeed, suits such as this are likely to be successful and are especially appropriate for pretrial disposition because of the rather clear liability issues involved. *See. e.g., Federal Financial Co. v. Savage,* 431 Mass. 814, (2000)(summary judgment against guarantor of note); *The First National*

*Bank of Boston v. Slade*, 379 Mass. 243 (1979)(same). Thus, Plaintiffs are likely to succeed on the merits of their claims and the only real issue is how to preserve whatever assets Albert has until judgment is entered for Plaintiffs.

5.    As principal of Essex and as guarantor pursuant to the Loan Guaranty and Lease Guaranty, Albert is clearly aware of Essex's defaults under the Note and the Beverly Nursing Home Lease and his obligations as guarantor to fully and timely perform all obligations of Essex under the Note and the Beverly Nursing Home Lease.

6.    The failure of Albert to make timely payments on the Note and the Beverly Nursing Home Lease, especially after being provided with notice of default, constitutes strong evidence that Albert is unable or unwilling to meet their obligations.

7.    Furthermore, injunctive relief is required to prevent Albert from dissipating assets. Upon information and belief, on November 1, 2002, just prior to executing the Loan Guaranty, Albert caused the ownership of his home at 23 Hawthorne Road, Windham, New Hampshire to be transferred, from John G. Albert and Cheryl A. Albert as joint tenants to Cheryl A. Albert, individually. A copy of the Warranty Deed is attached hereto as Exhibit A.

8.    Upon information and belief, absent injunctive relief, Albert may engage in additional asset transfers and thus will not have the financial capacity to satisfy a judgment by the time judgment enters in the Plaintiffs' favor.

9. In further support of this motion, Plaintiffs refer the Court to the Verified Complaint filed herewith.

WHEREFORE, Plaintiffs ask that this Court issue a Preliminary Injunction:

a.        Enjoining John G. Albert, and his agents, servants, employees, and attorneys, and anyone in active concert or participation with them from conveying, transferring, disbursing, concealing, encumbering, diminishing, devaluing, or dissipating any assets, real, personal or mixed, which he, she, it or they, jointly or severally, directly or indirectly, own(s) or control(s) or in which he, she, it or they have any beneficial interest, up to the value of $1,183,027.00, excluding however, only such assets which are reasonably necessary for the daily living expenses of John G. Albert.

Respectfully submitted,

CARE REALTY FUNDING, LLC,
265 ESSEX STREET, LLC
By their attorneys,

Melvin Hoffman (BBO#237120)
Charles P. Kindregan (BBO#554947)
Mark M. Mulligan (BBO#559431)
Looney & Grossman LLP
101 Arch Street
Boston, MA  02110
(617) 951-2800

Dated: February 2, 2005

2006,02-02    09:50    #891 P.02/03

FROM : CLEVELAND WATERS

BK3875PG1531

098410

2002 NOV -1 PM 2:01

ROCKINGHAM COUNTY
REGISTRY OF DEEDS

## WARRANTY DEED

We, JOHN G. ALBERT and CHERYL A. ALBERT, husband and wife, both of 23 Hawthorne Road, Windham, Rockingham County, New Hampshire 03087, as joint tenants with rights of survivorship, for consideration paid, grant to CHERYL A. ALBERT, of 23 Hawthorne Road, Windham, Rockingham County, New Hampshire 03087,

with WARRANTY COVENANTS,

A certain tract of land with the buildings thereon situated in Windham, Rockingham County, New Hampshire, bounded and described as follows:

The land in Windham, New Hampshire being Lot No. 246 on Hawthorne Road, as shown on Plan No. D-14502 as Lot 5-A-246.

Meaning and intending to convey the same premises conveyed to the Grantors herein by Warranty Deed of Paul R. McCann, Treasurer of TBL Inc., dated April 23, 1986, and recorded in the Rockingham County Registry of Deeds, Book 2597, Page 2764.

The Grantors hereby release all rights of homestead and other interests therein.

This is a noncontractual transfer which is exempt from transfer tax pursuant to New Hampshire. RSA 78-B:2, IX.

This deed was prepared from information supplied by the Grantors herein, and no independent title examination has been conducted.

Witness my hand this 1st day of November, 2002.

_____
John G. Albert

_____
Cheryl A. Albert

2005,02-02    09:50    #991 P.03/03

FROM :CLEVELAND WATERS

BK 3875 PG 1532

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKingham

The foregoing instrument was acknowledged before me this 1st day of November, 2002 by John
Albert and Cheryl A. Albert.

Notary Public
My commission expires:

LINDA BETTEZ LANK, Notary Public
My Commission Expires April 17, 2007

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

**SUPERIOR COURT DEPARTMENT**
**CIVIL ACTION NO.: 05-0192**

CARE REALTY FUNDING, LLC
AND
265 ESSEX STREET, LLC,

              **Plaintiffs**

   **v.**

JOHN G. ALBERT,

            **Defendant**

## JOINT MOTION TO CONTINUE DATE FOR PRELIMINARY INJUNCTION HEARING

Each of the parties moves that the Court continue the date of the preliminary injunction hearing in this case from Tuesday, February 8, 2005, to Thursday, February 10, 2005 at 2:00 P.M. As grounds for this motion, the parties state that counsel for defendant has a conflict on Tuesday, February 8, 2005. The hearing initially was scheduled by the Court on a motion for short order of notice. Defendant first learned of the scheduled hearing date on Thursday, February 3, 2005.

1

Respectfully submitted,

Plaintiff,
CARE REALTY FUNDING, LLC and
265 ESSEX STREET, LLC
By Their Attorneys,

Mark M. Mulligan, Esq. (BBO #559431)
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110
617-951-2800

Defendant,
JOHN G. ALBERT
By his Attorneys,

Nicholas J. Nesgos, BBO No. 553177
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
617-973-6100

Dated: February 4, 2005

2

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

**SUPERIOR COURT DEPARTMENT**
**CIVIL ACTION NO.: 05-0192**

---

CARE REALTY FUNDING, LLC
AND
265 ESSEX STREET, LLC,

                **Plaintiffs**

v.

JOHN G. ALBERT,

                **Defendant**

---

## JOINT MOTION TO CONTINUE DATE FOR PRELIMINARY INJUNCTION HEARING

Each of the parties moves that the Court continue the date of the preliminary

injunction hearing in this case from Tuesday, February 8, 2005, to Thursday,

February 10, 2005 at 2:00 P.M. As grounds for this motion, the parties state that counsel

for defendant has a conflict on Tuesday, February 8, 2005. The hearing initially was

scheduled by the Court on a motion for short order of notice. Defendant first learned of

the scheduled hearing date on Thursday, February 3, 2005.

Respectfully submitted,

Plaintiff,
CARE REALTY FUNDING, LLC and
265 ESSEX STREET, LLC
By Their Attorneys,


Mark M. Mulligan, Esq. (BBO #559431)
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110
617-951-2800


Defendant,
JOHN G. ALBERT
By his Attorneys,


Nicholas J. Nesgos, BBO No. 553177
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199
617-973-6100

Dated:  February 4, 2005



Posternak
POSTERNAK BLANKSTEIN & LUND LLP

February 4, 2005

Nicholas J. Nesgos
617-973-6168
617-722-4936 FAX
nnesgos@pbl.com

*Via Facsimile and Overnight Mail*

Clerk, Civil Division
Essex Superior Court
34 Federal Street
Salem, MA 01970

Re:    **Care Realty Funding, LLC and 265 Essex Street LLC v. John Albert**
       **Essex Superior Court Civil Action No. 05-0192**

Dear Sir or Madam:

I enclose herewith for filing in the above matter Joint Motion to Continue Date for Preliminary Injunction Hearing.

Please date-stamp the enclosed copy of this letter and return it in the self-addressed stamped envelope.

Thank you for your attention to this matter.

Very truly yours,

Nicholas J. Nesgos

Enclosures
cc:    Mark M. Mulligan, Esquire (via facsimile and U.S. Mail)

ID # 420869v01/13792-2

# Commonwealth of Massachusetts
## County of Essex
### The Superior Court

CIVIL DOCKET# **ESCV2005-00192**

Care Realty Funding LLC, 265 Essex Street LLC, Plaintiff(s)
vs.
John G Albert

*PoB - 57 wingate St. Haverhill, ma*
*also 23 Hawthorn Rd, Windham NH*

, Defendant(s)

## SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Melvin S Hoffman, Esquire**, plaintiff's attorney, whose address is **Looney & Grossman 101 Arch StreetBoston, MA 02110** , an answer to the complaint/cross claim/counterclaim which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint/ cross claim/counterclaim. You are also required to file your answer to the complaint/ cross claim/counterclaim in the office of the Clerk of this Court at Newburyport either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Essex County Superior Court, in Newburyport on **02/08/2005, at 02:00 PM in CtRm 1 (Newburyport),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at Newburyport, Massachusetts this 2nd day of February, 2005.

........................................................................
Clerk

## (AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

**SUPERIOR COURT DEPARTMENT**
**CIVIL ACTION NO.: ESCV2005-00192**

---

**CARE REALTY FUNDING, LLC**
**AND**
**265 ESSEX STREET, LLC,**

                    **Plaintiffs**

v.

**JOHN G. ALBERT,**

                    **Defendant**

---

### NOTICE OF FILING OF NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(a) and 1446(d), the Defendant, John G. Albert,

hereby gives notice that this matter is removed to the United States District Court for the

District of Massachusetts. Attached hereto as Exhibit 1 is a true copy of the Notice of

Removal filed on this day in the United States District Court for the District of

Massachusetts.

Respectfully submitted,

Defendant,
JOHN G. ALBERT
By his Attorneys,

_____
Nicholas J. Nesgos, BBO No. 553177
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA  02199
617-973-6100

Dated: February 9, 2005

1

## CERTIFICATE OF SERVICE

I, Nicholas J. Nesgos, attorney for defendant, hereby certify that on this 9th day of February, 2005, I served a copy of the within by faxing and mailing same, postage prepaid, to:

Mark M. Mulligan, Esq.
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

_____
Nicholas J. Nesgos

ID # 421305v01/13792-2/ 02.09.2005

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:



CARE REALTY FUNDING, LLC
AND
265 ESSEX STREET, LLC,

        **Plaintiffs**

v.

JOHN G. ALBERT,

        **Defendant**

## DEFENDANT'S NOTICE OF REMOVAL

The defendant, John G. Albert ("Albert"), hereby removes this action to the

United States District Court for the District of Massachusetts pursuant to 28 U.S.C.

§§1332(a)(1), 1441(a), and 1446(a). As grounds for the removal of this action, Albert

states as follows:

1.    The plaintiffs commenced this civil action in the Superior Court

Department of Essex County on or about February 2, 2005, captioned <u>Care Realty

Funding, LLC and 265 Essex Street LLC v. Albert</u>, Civil Action No. ESCV2005-00192

("the Removed Action"). Copies of the Summons and Complaint in the Removed Action

are attached here as Exhibit A.

2.    The Complaint was served on Albert on or about February 3, 2005.

3.    The Complaint seeks to recover damages for the defendant's alleged

breach of a Lease Guaranty and a Working Capital Loan Guaranty. The plaintiffs'

1

alleged damages exceed $1 million. <u>See</u> Complaint, ¶¶22 and 27. Accordingly, the matter in controversy exceeds the sum or value of $75,000.

4.    This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §1332(a)(1).

5.    According to the Complaint, each of the plaintiffs is a Delaware Limited Liability Company with a principal place of business in Hackensack, New Jersey.

6.    The defendant Albert is a natural person who resides in Windham, New Hampshire.

7.    This Notice of Removal has been filed within thirty (30) days after the defendant received notice of the Complaint. The plaintiffs are being served with this Notice of Removal.

Respectfully submitted,

Defendant,
JOHN G. ALBERT
By his Attorneys,

Nicholas J. Nesgos, BBO No. 553177
Posternak Blankstein & Lund LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
617-973-6100

Dated: February 9, 2005

2

## CERTIFICATE OF SERVICE

I, Nicholas J. Nesgos, attorney for defendant, hereby certify that on this 9th day of February, 2005, I served a copy of the within by faxing and mailing same, postage prepaid, to:

Mark M. Mulligan, Esq.
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

Nicholas J. Nesgos

3